[No. S025426. May 20, 1993.]

In re WILBUR F. LITTLEFIELD on Habeas Corpus.

### COUNSEL

Wilbur F. Littlefield, Public Defender, in pro. per., Laurence M. Sarnoff, Stuart Alan Chapman and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

Chase, Rotchford, Drukker & Bogust, John A. Daly, Joan E. Hewitt and Robert W. Carney for Respondent Superior Court.

Ira Reiner and Gil Garcetti, District Attorneys, Donald J. Kaplan, Diana L. Summerhayes and Brentford J. Ferreira, Deputy District Attorneys, for Respondent People.

## OPINION

**GEORGE, J.**—Petitioner Wilbur F. Littlefield, the Public Defender of Los Angeles County, challenges a judgment of the municipal court holding him in contempt of court for refusing to comply with a discovery order made pursuant to the reciprocal discovery provisions of Proposition 115 (Pen. Code, § 1054 et seq.),[1] the constitutionality of which we upheld in *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304]. The principal issue for our determination is whether section 1054.3 (setting forth the duty of disclosure on the part of the defense) and section 1054.5 (providing for enforcement of the disclosure requirements) authorize a trial court to impose the sanction of contempt when defense counsel refuses to comply with an order to acquire and disclose to the prosecution the address of a person whom the defense intends to call as a witness at trial. We conclude the applicable discovery statutes authorize both an order to obtain that address, if reasonably accessible, and a contempt sanction for refusal to obey that order.

We further conclude, however, that the written judgment of contempt failed to comply with the strict statutory requirements applicable to judgments of contempt, as articulated and applied in past judicial decisions, because the judgment failed to specify sufficiently the particular acts upon which the trial court based the exercise of its contempt power. For this reason, the judgment of contempt must be set aside.[2]

I

On May 9, 1991, a complaint was filed against defendant Armando Orosco Montiel in the Municipal Court for the Glendale Judicial District of Los Angeles County, alleging three misdemeanor violations: Vehicle Code section 23152, subdivision (a) (driving under the influence); Vehicle Code section 23152, subdivision (b) (driving at or above the level of .08 percent blood alcohol); and Vehicle Code section 12500, subdivision (a) (driving unlicensed). Following these allegations, the complaint set forth the following statement: "Pursuant to Penal Code section 1054.5(b), the People are hereby informally requesting that defense counsel provide discovery to the People as required by Penal Code section 1054.3."

On that same day defendant Montiel, represented by Deputy Public Defender Stuart A. Chapman, was arraigned and pleaded not guilty. On June

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]Throughout this opinion, we employ the term "judgment of contempt" in referring to the "ORDER AND JUDGMENT OF CONTEMPT," the document manifesting, as required by Code of Civil Procedure section 1211, the order adjudging petitioner guilty of contempt.

12, 1991, the parties appeared in court for jury trial, and the case was trailed to June 17, 1991. During the June 12 proceedings, Chapman requested that a defense witness, Sandra Pavon, who was present in court, be ordered to return on June 17. Chapman stated that the witness had provided him with her telephone number and that she could be placed "on call." When the trial court did so, the prosecution orally moved "for discovery of any statements of the defense witness that [the defense] intend[s] to use." The court replied, "I will allow all discovery to be handled informally between counsel. The Court does not involve itself in discovery matters unless there is a failure to comply."

On June 17, when the defense answered ready for trial, the prosecution informed the court that the defense had not complied with the prosecution's informal request for discovery. The court ordered the defense to comply with the prosecution's discovery request forthwith. Chapman then requested a brief stay of any discovery order so that he could file points and authorities addressing "[c]onstitutional issues" relating to Proposition 115. (At that time, our decision in *Izazaga* v. *Superior Court*, *supra*, 54 Cal.3d 356, had not yet been filed.) After a short recess, Chapman filed written opposition to the prosecution's discovery request, including a demand for 15 days' formal notice under the local discovery rules. In his opposition, Chapman urged that the provisions authorizing prosecutorial discovery under Proposition 115 were inapplicable to misdemeanor cases and violated various constitutional rights and privileges of the defendant.

With respect to the issue of notice, the trial court ruled that section 1054.5 prevailed over the local rule cited by the defense. Also rejecting the constitutional arguments and the other grounds asserted by the defense in opposition to the request for discovery, the court ordered the defense to comply forthwith.

Chapman notified the court that he had been instructed by his superiors at the public defender's office to refuse to comply with such an order. The court then put the matter over to the following day for further proceedings to determine which sanctions, among those authorized by section 1054.5 for noncompliance with a discovery order, would be appropriate. That following day (June 18), Chapman requested that the court refrain from imposing any sanction that would prejudice the defendant. The court responded that, if it were to abide by Chapman's request, it would be left with no alternative but to consider the sanction of holding the public defender in contempt. A contempt hearing was set for June 20, 1991.

On that date, petitioner Wilbur F. Littlefield appeared with his counsel, Albert J. Menaster, a deputy in the public defender's office. Menaster,

diverging somewhat from the arguments presented by Chapman, maintained that the public defender simply had nothing to disclose. Menaster acknowledged that under section 1054.3, the prosecution was entitled to the names, addresses, and written or recorded statements of any witnesses the defense intended to call at trial. He represented there was only one person, Sandra Pavon, whom the defense possibly would call as a witness at trial, and inasmuch as the trial court had ordered Pavon to return to court, the prosecution had notice of her identity. He further represented that Chapman deliberately had not asked this witness for her address, fearing she would be intimidated by the prospect of being contacted by the police department or the district attorney's office. Menaster further represented that Pavon had given Chapman her telephone number but not her address, that the public defender's office did not have her address, that she had given that office an oral statement, but there was no written or recorded statement. Accordingly, argued Menaster, there was no address or written or recorded statement of this potential defense witness that was in the possession of the public defender's office and subject to disclosure to the prosecution pursuant to section 1054.3. Menaster also argued that, at this point in time, the defense had not yet determined whether to call Ms. Pavon as a witness at trial.

The trial court, while acknowledging that "[defense counsel] don't have an address, and I can't order them to deliver that which they do not have . . . ," nevertheless made a finding that "there is a reasonable and likely possibility that Sandra Pavon is a witness who has material information with respect to this case, and the defense is under an obligation to provide either the witness'[s] address or obtain the address so the prosecution may interview the witness." The court ordered the defense to contact the witness by telephone, obtain her address, and provide it to the prosecution, or, alternatively, to produce the witness in court in order to afford the prosecution an opportunity to interview her prior to trial.[3] Petitioner then expressly declined to comply with the court's order, opining that it exceeded the court's authority to enforce prosecutorial discovery. Petitioner also related his perception that he would be committing a gross neglect of his duties, were he to comply with such an order pending the California Supreme Court's determination of the constitutionality of the reciprocal discovery provisions. The trial court proceeded to hold petitioner in contempt, imposed a sanction of five days' incarceration in the county jail and a fine of $1,000, and ordered execution of the sanction stayed until August 5, 1991.

---

[3]The trial court acknowledged that the witness could refuse to be interviewed. A defense witness cannot be compelled to grant an interview to the prosecution. (See Hogan, 2 Modern Cal. Discovery (4th ed. 1988) § 17.8, p. 348 ["There is no prohibition against an investigator for the District Attorney seeking an informal interview with (potential defense witnesses.) However, frequently they are unwilling to submit to such questioning either because they have been requested by the defendant or his counsel to refuse to talk with the prosecution, or because, even without such a request, they simply decline to be interviewed."].)

The trial proceeded on June 27. Ms. Pavon was called as a witness and testified on behalf of the defense.[4] The jury found defendant not guilty on all charges.

Following conclusion of the trial, Chapman requested that the court reconsider its contempt finding, in view of the revelation at trial that Pavon had been present at the scene of defendant's arrest, that the investigating police officers had obtained her name and interviewed her at that time, ascertaining that she had been a passenger in the vehicle allegedly driven by defendant, but that the officers had failed to include her address or her statements in their report. Chapman argued the discovery order was invalid because the police had had equal access to the witness, could have obtained her address, but had neglected to do so. The court nevertheless declined to withdraw its contempt order.

The written judgment of contempt had been signed on June 24, 1991, but was not filed until July 2, 1991. On July 3, 1991, petitioner filed a petition for writ of habeas corpus in the superior court, seeking to set aside the judgment of contempt. The municipal court, as respondent, and the District Attorney's Office of Los Angeles County, representing the People as real party in interest, filed "returns." The superior court summarily denied the petition. Petitioner then filed a petition for writ of habeas corpus in the Court of Appeal. By that time, several of the issues raised by petitioner had been resolved adversely to his position, including his constitutional challenges to the prosecutorial discovery provisions of Proposition 115 (see *Izazaga* v. *Superior Court, supra,* 54 Cal.3d 356) and his contention that these provisions do not apply in misdemeanor cases (see *Hobbs* v. *Municipal Court* (1991) 233 Cal.App.3d 670 [284 Cal.Rptr. 655]). The Court of Appeal summarily denied the petition.

Petitioner sought review in this court, which we granted on April 23, 1992, transferring the matter to the Court of Appeal with instructions to vacate the order denying the petition and issue an order directing the municipal court to show cause why the relief prayed for should not be granted. After issuing an order to show cause, the Court of Appeal, over the dissent of one justice, again upheld the judgment of contempt. In its opinion, the majority concluded that the defense was obligated to make available to the prosecution the statutorily designated information that was readily available to the defense, and could not subvert the intent of the statute by failing,

---

[4]Pavon testified that defendant had not been the driver of the automobile but rather had been a passenger in the back seat, while a man named Miguel drove the vehicle. She stated that defendant had entered the front seat only to use the vehicle's cassette player after Miguel had parked the automobile and left. She testified further that after the police had taken defendant into custody, she searched for Miguel and found him in a bar.

inadvertently or deliberately, to obtain the readily available address of a witness whom the defense intended to call at trial.

We again granted review, to determine whether the reciprocal discovery provisions of section 1054 et seq. authorize a trial court to impose the sanction of contempt for the refusal by defense counsel to comply with an order to acquire the address of a person whom the defense intends to call as a witness at trial,[5] where that address is reasonably accessible; and the further issue, in the event the underlying discovery order is valid, whether the judgment of contempt is facially adequate to establish the court's lawful exercise of its contempt power against petitioner.[6]

## II

In criminal proceedings, under the reciprocal discovery provisions of section 1054 et seq., all court-ordered discovery is governed exclusively by—and is barred except as provided by—the discovery chapter newly enacted by Proposition 115. (§§ 1054, subd. (e), 1054.5, subd. (a).)[7] The scope of a defense attorney's discovery obligations under section 1054 et seq. is set forth in section 1054.3, as follows: "The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial. [¶] (b) Any real evidence which the defendant intends to offer in evidence at the trial."

---

[5]We construe the trial court's order directing the defense to produce the witness in court as simply providing the defense with an alternative to disclosing the address of the witness, and not an independent order compelling production of the witness in court. Therefore, we do not address the question whether an order requiring the defense to produce a witness in court for a purpose other than the giving of testimony is authorized by section 1054.5, subdivision (b).

[6]Because we conclude the judgment of contempt must be set aside on the ground the document embodying the judgment fails to set forth with sufficient specificity the particular acts upon which the trial court based the exercise of its contempt power, we need not and therefore do not address the numerous other arguments made by petitioner urging that the judgment of contempt be set aside.

[7]Section 1054, subdivision (e), provides that a purpose of the chapter is to "provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States."

Section 1054.5, subdivision (a), provides in part: "No order requiring discovery shall be made in criminal cases except as provided by this chapter. . . ."

■ Persons whom the defense intends to call as witnesses at trial, in the context of section 1054.3, subdivision (a), include " 'all witnesses it reasonably anticipates it is likely to call . . . .' " (*Izazaga* v. *Superior Court, supra,* 54 Cal.3d at p. 375.)

Section 1054.5, subdivision (b), confers upon the trial court the authority to "make any order necessary to enforce" the disclosure requirements set forth in section 1054.3 and the other provisions of the discovery chapter. (§§ 1054-1054.7.)[8]

Section 1054.7 provides that the "disclosures required under this chapter shall be made . . . unless good cause is shown why a disclosure should be denied, restricted, or deferred. . . ," and that "[u]pon the request of any party, the court may permit a showing of good cause for the denial or regulation of disclosures, or any portion of that showing, to be made in camera. . . ."

■ In construing these provisions to determine whether they authorized the discovery order made in the present case, our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure. (See *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1072 [2 Cal.Rptr.2d 160, 820 P.2d 262]; *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; see also *Izazaga* v. *Superior Court, supra,* 54 Cal.3d, at p. 372.) "To determine intent, ' "The court turns first to the words themselves for the answer." ' " (*Delaney* v. *Superior Court, supra,* 50 Cal.3d at p. 798.) Among the primary purposes of the new discovery chapter, as expressly stated in section 1054, are "[t]o promote the ascertainment of truth in trials by requiring timely pretrial discovery" and "[t]o save court time in trial and avoid the necessity for frequent interruptions and postponements." (§ 1054, subds. (a), (c).) These objectives reflect,

[8]Section 1054.5 provides in pertinent part: "(a) No order requiring discovery shall be made in criminal cases except as provided by this chapter. . . . [¶] (b) Before a party may seek court enforcement of any of the disclosures required by this chapter, the party shall make an informal request of opposing counsel for the desired materials and information. If within 15 days the opposing counsel fails to provide the materials and information requested, the party may seek a court order. Upon a showing that a party has not complied with Sections 1054.1 or 1054.3 and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure. [¶] (c) The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted. The court shall not dismiss a charge pursuant to subdivision (b) unless required to do so by the Constitution of the United States."

and are consistent with, the judicially recognized principle that timely pretrial disclosure of all relevant and reasonably accessible information, to the extent constitutionally permitted, facilitates "the true purpose of a criminal trial, the ascertainment of the facts." (See *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1], overruled on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631 [388 P.2d 33, 12 A.L.R.3d 810]; see also *Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 58-59 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]; *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305].)

 In light of the foregoing objectives of the new discovery chapter, we conclude that the statutory language of section 1054.3—that the defendant or his or her attorney "shall disclose to the prosecuting attorney" the names and addresses of all persons whom the defense intends to call as witnesses at trial—reasonably should be construed to require the defense to provide the prosecution with the names and addresses of prospective defense witnesses to the extent this information is known to, or reasonably accessible to, the defense. Allowing the defense to refrain deliberately from learning the address or whereabouts of a prospective witness, and thus to furnish to the prosecution nothing more than the name of such a witness, would defeat the objectives of the voters who enacted section 1054.3: to permit the prosecution a reasonable opportunity to investigate prospective defense witnesses before trial so as to determine the nature of their anticipated testimony, to discover any matter that might reveal a bias or otherwise impeach the witnesses's testimony, and to avoid the need for midtrial continuances for these purposes. (See *Hobbs* v. *Municipal Court, supra*, 233 Cal.App.3d at pp. 685-686.) The objectives of this enactment are not met where the required disclosure is inadequate to permit the party seeking discovery to identify with particularity the witness and his or her whereabouts.

An Oregon court, applying a discovery statutory provision nearly identical to section 1054.3, subdivision (a), reached a similar conclusion. In *State* v. *Clarke* (1991) 106 Ore.App. 204 [808 P.2d 92], defense counsel prior to trial disclosed to the prosecution the name of a person whom the defense sought to call as a witness at trial, but not the address of that person. The defendant was able to locate the residence of this witness but did not know his address. At trial, the court granted the prosecution's motion to exclude the testimony of this witness, observing that the defense could have discovered and disclosed his address at a much earlier date, and that its failure to do so constituted a violation of the reciprocal statutory disclosure requirements. On appeal following the defendant's conviction, the appellate court agreed that the failure to disclose the witness's address constituted a violation of the

discovery statute (*id.*, at p. 93), although it further concluded that the sanction excluding the witness's testimony was unwarranted, and therefore reversed the conviction. (*Id.*, at p. 94.)

Other discovery statutes (including those in various state and federal jurisdictions), as well as judicially promulgated rules relating to pretrial disclosure, routinely require a party to disclose the *names and addresses of those persons whose identity must be disclosed pretrial.* For example, sister state discovery provisions patterned after the standards of the American Bar Association (II ABA Standards for Criminal Justice, std. 11-2.1 (2d ed. 1980), p. 11•14) generally require the prosecution to provide the defense with the names and addresses of persons whom the prosecution intends to call as witnesses at trial. (See 2 LaFave & Israel, Criminal Procedure (1984 ed.) § 19.3(f), p. 491.) Federal courts and a majority of sister state jurisdictions require the defense to disclose the names and addresses of witnesses upon whom the defense intends to rely in establishing an alibi. (2 LaFave & Israel, *op. cit. supra*, § 19.4(b), pp. 511-512.) California civil discovery statutes require the parties to disclose the names and addresses of their prospective expert trial witnesses. (Code Civ. Proc., § 2034, subds. (a)(1), (f)(1)(A).) With regard to the prosecution's duty to disclose to the defense (as required by the federal Constitution) the identity of a police informant who was a material witness to the crime of which the accused is charged, we have held that such duty is not fulfilled by the mere disclosure of the informant's name, but requires disclosure of information regarding the whereabouts of the informant as well. (*Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851-853 [83 Cal.Rptr. 586, 464 P.2d 42].)

These statutes and rules recognize—implicitly, if not explicitly—that the disclosure of only the name of the witness whose identity must be divulged prior to trial, unaccompanied by information regarding the whereabouts of that witness, generally would not fulfill the purpose of the disclosure requirement. For example, with respect to the disclosure of alibi witnesses, a false alibi defense based upon perjured testimony "can be readily discouraged by affording the prosecution an opportunity to prepare for their testimony . . . ." (2 Lafave & Israel, *op. cit. supra*, § 19.4(b), p. 512.) Such an opportunity, however, would be hampered greatly, were the prosecution to be unable to contact the prospective alibi witnesses.

For this reason, the practice of deliberately failing to learn the whereabouts of a witness has not been condoned. In *Eleazer, supra,* 1 Cal.3d 847, this court stated: "We cannot accept the suggestion of many Courts of Appeal that the prosecution automatically fulfills its obligation of disclosure when it reveals all that it knows, despite the inadequacy of such data to

locate the informer. The present case, moreover, does not merely involve an insufficiency of government knowledge; here the police deliberately resolved to make no effort to learn the residence of the informer or to establish a way by which to locate him. That the police did so without motive to harm defendant, but to foster the security of the informer, does not afford a sufficient justification. [¶] . . . [¶] . . . Due process requires . . . that the police and the district attorney undertake *reasonable efforts* in good faith to *locate* the informer so that either party or the court itself . . . could, if it so desired, subpena him as a witness." (*Id.*, at pp. 851-853, fns. omitted.)

It is true that *Eleazer* involved a police informant, and that the *constitutional* obligations it articulated apply only to such informants who are material witnesses to a crime. Under the discovery scheme adopted by Proposition 115, however, both the prosecution and the defense now have the *statutory* obligation to disclose to the other party the names and reasonably accessible addresses of witnesses—an obligation given constitutional force by the addition of section 30, subdivision (c) to article I of the state Constitution, declaring that discovery shall be reciprocal in criminal cases. Clearly, the general rationale of *Eleazer*, condemning the practice of deliberately failing to acquire a reasonably accessible address that a party is required to disclose, is relevant to the reciprocal discovery obligations imposed upon the parties by Proposition 115.

Moreover, courts in general have discouraged the practice of deliberately failing to learn or acquire information that, under applicable statutes or case law, must be disclosed pretrial, concluding that such gamesmanship is inconsistent with the quest for truth, which is the objective of modern discovery. In *Zellerino v. Brown* (1991) 235 Cal.App.3d 1097 [1 Cal.Rptr.2d 222], the plaintiff, seeking to justify her failure to make a timely designation of expert witnesses, argued that she had not yet retained these witnesses as of the disclosure deadline. Rejecting her proffered excuse, the court stated, "What [plaintiff] seeks is a return to cat-and-mouse discovery, where each side tries, as do Tom and Jerry, to sandbag the other. We eschew any construction of the discovery statutes which would lead to this absurd result." (*Id.*, at p. 1115.)

We also recognize that section 1054.3 is part of a general statutory discovery scheme, given constitutional force by section 30, subdivision (c) of article I of the California Constitution, and therefore must be considered in the context of, and with reference to, the entire scheme. (See *People v. Burnes* (1990) 224 Cal.App.3d 1222, 1233 [274 Cal.Rptr. 466]; *People v. Jackson* (1987) 192 Cal.App.3d 209, 218 [237 Cal.Rptr. 373].) We concluded in *Izazaga, supra,* 54 Cal.3d 356, that the manifest intent behind the

enactment of this new discovery scheme, including the constitutional amendment prescribing that discovery in criminal cases be "reciprocal in nature," was to remove the roadblocks to prosecutorial discovery and to reopen the two-way street of *reciprocal discovery*. We therefore determined that the initiative measure should be interpreted, if possible, as providing for reciprocal duties of disclosure by the prosecution and the defense, and that any imbalance in prosecutorial and defense duties of disclosure must favor the defendant, under the reciprocity required by the due process clause of the federal Constitution. (54 Cal.3d at pp. 372-377.)

■ In view of the reciprocal nature of the discovery obligations under section 1054 et seq., the disclosure requirements applicable to the prosecution under section 1054.1 are pertinent to our determination of the corresponding requirements applicable to the defense under section 1054.3. Section 1054.1 requires disclosure of specified information, including the names and addresses of persons the prosecutor intends to call as witnesses at trial, "if it is *in the possession* of the prosecuting attorney or if the prosecuting attorney knows it to be *in the possession* of the investigating agencies . . . ."[9] (Italics added.)

Petitioner argues that under section 1054.1, the prosecution is required to disclose only information that is in its possession, and thus the prosecution has no duty to learn or acquire the address or whereabouts of a prospective witness, even if that information is readily available; accordingly, petitioner maintains, section 1054.3 may not be construed as imposing such a burden upon the defense.

We agree with petitioner that in the event section 1054.3 is construed as imposing upon the defense a burden of disclosure not borne by the prosecution under section 1054.1, the statutory scheme would be of doubtful constitutional validity. (*Izazaga, supra*, 54 Cal.3d at pp. 372-377.) In suggesting, however, that under section 1054.1 the prosecution—by deliberately refraining from obtaining the address of a witness—may avoid its duty to disclose

---

[9]Section 1054.1 provides in full: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. [¶] (e) Any exculpatory evidence. [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

that information, petitioner has misconstrued the words ("in the possession") of section 1054.1. Petitioner proposes an unduly narrow interpretation that fails to consider numerous judicial decisions preceding the adoption of Proposition 115.

California courts long have interpreted the prosecutorial obligation to disclose relevant materials in the possession of the prosecution to include information "within the possession or control" of the prosecution. (See *Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 816 [112 Cal.Rptr. 257, 518 P.2d 1353, 95 A.L.R.3d 820].) In *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 535, we construed the scope of possession and control as encompassing information "reasonably accessible" to the prosecution. In *Engstrom* v. *Superior Court* (1971) 20 Cal.App.3d 240, 243 [97 Cal.Rptr. 484] (disapproved on other grounds in *Hill* v. *Superior Court, supra,* 10 Cal.3d at p. 820), the court held that materials discoverable by the defense include information in the possession of all agencies (to which the prosecution has access) that are part of the criminal justice system, and not solely information "in the hands of the prosecutor." (20 Cal.App.3d at p. 244.) In *People* v. *Coyer* (1983) 142 Cal.App.3d 839, 843 [191 Cal.Rptr. 376], the court described information subject to disclosure by the prosecution as that "readily available" to the prosecution and not accessible to the defense.

We find no basis for petitioner's assumption that, by designating discoverable information under section 1054.1 as that "in the possession" of the prosecution or its investigating agencies, Proposition 115 was intended to abrogate this prior rule precluding the prosecution from withholding information that is "reasonably accessible" to it, such as the address of a witness that readily could be obtained through a request of the witness. Rather, the more likely purpose of including such language in the statute was simply to clarify and confirm that the prosecution has no *general duty* to seek out, obtain, and disclose all evidence that might be beneficial to the defense. (See *In re Koehne* (1960) 54 Cal.2d 757, 759 [8 Cal.Rptr. 435, 356 P.2d 179] ["the law does not impose upon law enforcement agencies the requirement that they take the initiative, or even any affirmative action, in procuring the evidence deemed necessary to the defense of an accused"]; *People* v. *Hogan* (1982) 31 Cal.3d 815, 851 [183 Cal.Rptr. 817, 647 P.2d 93] [There is no general duty on the part of the police or the prosecution to obtain evidence, conduct any tests, or " 'gather up everything which might eventually prove useful to the defense.' "].)

Thus, in light of the purpose of the discovery provisions contained in Proposition 115, we conclude that sections 1054.1 and 1054.3 reasonably should be interpreted to require both the prosecution and the defense to

disclose the names and addresses of persons whom they intend to call as witnesses at trial, if such information is known or is reasonably accessible. Such a requirement does not impose an unduly exacting or unworkable burden of disclosure. A party must disclose the names and addresses of witnesses who are reasonably accessible to it *only* if the relevant statutes mandate disclosure of such names and addresses. We do not suggest, for example, that a party has a duty to obtain a written statement from a witness, even if the witness is ready and willing to give such a statement.

Of course, in light of our construction of section 1054.3, subdivision (a), if the defense has neither knowledge of, nor reasonable access to, the address of a person whom it intends to call as a witness, and takes no action that interferes with the prosecution's access to that witness, the defense is not subject to the imposition of any sanction or any of the other enforcement provisions available pursuant to section 1054.5, subdivision (b), for failure to disclose that address. Under section 1054.7, however, the party seeking relief from the disclosure requirements has the burden of demonstrating that the information subject to discovery is unavailable. Finally, if a party seeks to withhold disclosure of the address or whereabouts of a prospective witness because of "threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement" (§ 1054.7), that party may request leave to make an in camera showing of good cause as to why disclosure should be denied, restricted, or deferred. (*Ibid.*)

In the present case, the record supports the trial court's finding that Pavon was a person whom the defense reasonably anticipated it was likely to call as a witness: she appeared in court on the date the case was called for trial, and the deputy public defender requested that the court order her return on the date to which the case was trailed for trial.

The record also reflects defense counsel did not establish that Pavon's address was not reasonably accessible to the defense. Deputy Public Defender Menaster represented to the court that defense trial counsel (Chapman) had not asked the witness for her address, fearing that she would be intimidated by contact with the police department or the district attorney's office—not that he was unable to obtain the address. Petitioner therefore failed to establish that the address was not reasonably accessible, and the trial court's order compelling petitioner to contact the witness by telephone, in order to acquire her address, was authorized as an order "necessary to enforce the provisions" of section 1054.3. (§ 1054.5, subd. (b).) Although petitioner could have sought leave under section 1054.7 to demonstrate good cause why disclosure should be denied, petitioner failed to seek such relief.

Thus, for the reasons discussed above, we conclude that sections 1054.3 and 1054.5 authorized the trial court to order petitioner to contact the witness by telephone in order to acquire her address for disclosure to the prosecution. The discovery order therefore was lawful and enforceable. Accordingly, petitioner's refusal to obey that order constituted an act of contempt of the authority of the court (Code Civ. Proc., § 1209, subd. (a)(5), punishable pursuant to section 1054.5, subdivision (b).

## III

█ Although we have determined that the underlying discovery order was authorized by sections 1054.3 and 1054.5, we nevertheless conclude that the judgment of contempt entered in this case must be set aside. As we shall explain, the formal "order and judgment of contempt" rendered by the trial court failed to comply with the jurisdictional requirement that such an order recite all of the facts necessary to support the adjudication of contempt.

Petitioner refused in open court to comply with the order that he obtain and disclose the address of Pavon. Code of Civil Procedure section 1211 provides: "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, *reciting the facts as occurring in such immediate view and presence*, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed." (Italics added.)

Pursuant to this statutory provision, the trial court issued its order providing, in part: "[¶] 3. On June 17, 1991, the case was again called on the trial calendar. Both the People and the defense announced they were ready to proceed. The prosecutor informed the Court that the defense had failed to provide any discovery, either formally or informally, and requested discovery relating to Ms. Pavon. The defense thereupon filed points and authorities respecting their opposition to the discovery request, and filed a demand for fifteen days notice. After reading and considering each motion, and upon hearing argument, the Court denied the defense motion to oppose discovery and ordered the defense to comply with the discovery request. Mr. Chapman stated it was the position of the Los Angeles County Public Defender to refuse to comply with any such order and thereupon refused to yield the requested information. [¶] 4. The Court considered the numerous options for noncompliance under Penal Code section 1054.5(B), and made certain findings. The transcript of those findings from June 17, 1991 are incorporated into this Order and Judgment by reference. [¶] 5. On June 20, 1991, the Court held a hearing to determine whether the Los Angeles County Public

Defender should be held in contempt of court for refusing to comply with the Court's discovery order. Present representing the Office of the Los Angeles County Public Defender was Public Defender Wilbur F. Littlefield (hereafter, 'contemner'). After reviewing the history of the proceedings and upon hearing lengthy argument from contemner's counsel, the Court directly ordered contemner to comply forthwith with the discovery order. [¶] 6. Contemner refused to obey the order. [¶] 7. The court heard and considered contemner's explanation for his conduct and rejected it because, in light of controlling federal and state authority, contemner's position cannot be entertained in good faith. . . ."

The order then recites that in the immediate view and presence of the court, petitioner refused to comply with the discovery order, that the court adjudged petitioner guilty of contempt of court, and that a transcript of a "June 24, 1991 proceeding" was incorporated by reference into the order and judgment of contempt.

We conclude the foregoing written judgment of contempt fails to satisfy the requirements of Code of Civil Procedure section 1211. "The requirements of the order adjudicating contempt have been given expression in numerous opinions. In *Arthur* v. *Superior Court* [(1965)] 62 Cal.2d [404] at page 407 [42 Cal.Rptr. 441, 398 P.2d 777], we observed: 'Section 1211 of the Code of Civil Procedure establishes the procedure that is to be followed in adjudging persons in contempt of court. Contempt committed in the immediate view and presence of the court, known as direct contempt, may be treated summarily. All that is required is that an order be made reciting the facts, adjudging the person guilty and prescribing the punishment.' *We have emphasized, however, that such an order is valid only if it recites facts with sufficient particularity to demonstrate on its face that petitioner's conduct constituted a legal contempt.* [Citations.]" (*In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248], italics added.)

The recital-of-facts requirement is not met by a mere statement of the trial judge's conclusions regarding the nature of the conduct giving rise to the contempt. The order adjudging a person guilty of contempt must be stated with sufficient particularity to demonstrate on its face, "without aid of speculation or reference to any extrinsic document[,] that a contempt actually occurred." (*Hawk* v. *Superior Court* (1974) 42 Cal.App.3d 108, 125, fn. 16 [116 Cal.Rptr. 713];[10] see *McCann* v. *Municipal Court* (1990) 221 Cal.App.3d 527, 536 [270 Cal.Rptr. 640]; see also 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 178, p. 175.)

[10]Although, as we indicated in *In re Buckley, supra*, 10 Cal.3d at page 246, and footnote 12, transcripts of pertinent hearings attached to the written contempt judgment may be considered

In the present case, the record establishes that the discovery order that petitioner refused to obey was the one made at the June 20 hearing, directing him to obtain and disclose the address of Pavon. At that time, petitioner appeared in court for the first time in these proceedings, and his attorney (Mr. Menaster) advised the court that the public defender's office possessed the telephone number of the witness but did not possess her address and had not asked her for it. The trial court ordered petitioner to contact the witness by telephone and acquire her address or, alternatively, produce the witness in court in order to afford the prosecution an opportunity to interview her. Petitioner refused to comply with that order, at which time the court held him in contempt.

The written judgment of contempt makes no reference to this June 20 discovery order directing petitioner to obtain and disclose the address of Pavon. It refers only to the discovery order made on June 17, and states that petitioner refused to comply with that order. The record, however, does not support a finding that petitioner was held in contempt on June 17 or refused to comply with any discovery order made on that date. Rather, as established by the record, the court held petitioner in contempt for refusing to obey the June 20 discovery order. Accordingly, the judgment of contempt is invalid, because it fails to make any mention of the June 20 order or of petitioner's refusal to obey that order. Thus, the judgment of contempt fails to comply with the requirement of Code of Civil Procedure section 1211, as construed in *In re Buckley, supra*, 10 Cal.3d 237, 247, that the judgment "recite[] facts with sufficient particularity to demonstrate *on its face* that petitioner's conduct constituted a legal contempt." (Italics added.)[11]

For these reasons, the judgment of contempt is invalid and must be set aside.

---

in order to ascertain the context in which the contempt occurred, the written order adjudging a person guilty of contempt nonetheless must state *on its face* the specific act constituting the contempt. (*Ibid.*)

Regardless, however, of the effect of incorporation of extrinsic matter, the instant judgment of contempt, as we explain, *post* (fn. 11), fails to incorporate by reference the transcript of the pertinent proceedings that occurred on June 20, 1991.

[11]The judgment of contempt recites that it incorporates by reference the transcript of the "findings from June 17, 1991" and the "June 24, 1991 proceeding." Apart from the effect of incorporation of extrinsic matter (see fn. 10, *ante*), in the present case the transcripts of these proceedings do not serve to establish the act constituting the contempt that occurred on June 20. The reference to the "June 24" proceeding either constitutes a typographical error (the record does not reflect that any proceedings relating to contempt took place on June 24), or refers to the trial court's act of signing the judgment of contempt on that date, but in either event does not assist in the recitation of facts relating to the June 20 proceedings.

IV

The judgment of the Court of Appeal denying the petition for writ of habeas corpus is reversed, and the matter is remanded to that court with directions to set aside the judgment of contempt entered by the municipal court.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—I concur in part III of the majority opinion and the result, i.e., that the judgment of contempt is defective on its face and must be set aside for that reason.

I dissent, however, from part II of that opinion and the conclusion that Penal Code section 1054.1 et seq. authorized the trial court to order petitioner to obtain the address of a prospective defense witness and disclose it to the prosecution. In my view, that was not a lawful order. It offends the privilege against self-incrimination granted to all criminal defendants, including petitioner's client, by article I, section 15 of the California Constitution. Therefore, petitioner's refusal to obey the order was not an act of contempt.

A loose dictum in Justice Traynor's opinion for the majority in *Jones* v. *Superior Court* (1962) 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213] appears to have led to the problem being improperly resolved ever since. He wrote, in one ill-conceived sentence, that discovery "should not be a one-way street." (*Id.* at p. 60.) The phrase has given rise to an assumption that the contestants in a criminal case somehow compete on a basis of equality. But under principles of American jurisprudence recognized since the founding of the republic, the prosecution and the defense do not travel equally on a mythical two-way street. The prosecution has the burden of proving the defendant's guilt beyond a reasonable doubt. The defendant is clothed with a presumption of innocence. He cannot be compelled to incriminate himself, and, therefore, he may stand mute and in no manner be required to aid the prosecution in proving his guilt.

Justice Peters, in his concurring and dissenting opinion in *Jones*, reasoned that "[i]t is the constitutional right of the defendant, who is presumed to be innocent, to stand silent while the state attempts to meet its burden of proof, that is, to prove the defendant's guilt beyond a reasonable doubt. The defendant, up until now, did not have to take an active part in the ascertainment of the facts. The majority opinion does not merely enlarge a simple judicial principle of pretrial procedure, it fundamentally alters our concepts

of the rights of the accused, and forces him to come forward with information before the prosecution has presented a case against him." (*Jones* v. *Superior Court*, *supra*, 58 Cal.2d at pp. 64-65 (conc. & dis. opn. of Peters, J.).) I find that reasoning irrefutable.

Justice Dooling, also concurring and dissenting in *Jones*, was prescient. The deviation was relatively minor in that case, he declared, but he was "fearful as a matter of policy of the future outcome of even so small an initial court-created inroad upon the heretofore unquestioned right of a defendant in a criminal case to remain silent, if he chooses, at every stage of the proceeding against him." (*Jones* v. *Superior Court*, *supra*, 58 Cal.2d at p. 69 (conc. & dis. opn. of Dooling, J.).)

Justice Dooling's fears were realized with the promotion of Proposition 115 and the decision in *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304]. The promoters of the measure and the *Izazaga* majority overlooked all the foregoing principles.

The majority herein sugarcoat their cyanide pill by ordering the contempt judgment in this case set aside. That is helpful to petitioner personally, but only for the moment. He and other criminal defense counsel in the future will be unable to properly protect defendants who may choose to assert their constitutional right to remain silent and to give no assistance to the prosecutors who are attempting to convict them. Indeed, the majority would approve of a court order requiring defense counsel to affirmatively seek information not previously divulged—e.g., addresses—in order to pass it on to aid the prosecution. At that point defense counsel, acting under compulsion, will no longer be permitted to serve the avowed interests of his client. He will become an arm of the prosecution itself.

The fundamental issue in this case was discussed at length in *Izazaga*. I adhere to the views I expressed in my dissenting opinion. (*Izazaga* v. *Superior Court*, *supra*, 54 Cal.3d at pp. 387-402 (dis. opn. of Mosk, J.).)