Filed 6/7/21  P. v. Hernandez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSE ALFREDO HERNANDEZ,<br><br>        Defendant and Appellant. | A160524<br><br>(Del Norte County<br>Super. Ct. No. CRPB18-5094) |

A jury found defendant Jose Alfredo Hernandez guilty of two counts of possession of a weapon while in custody.  Defendant contends one of the counts must be reversed on the grounds of a discovery violation and ineffective assistance of counsel.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Charges*

Defendant is an inmate at Pelican Bay State Prison.  By information filed in January 2019, the Del Norte County District Attorney charged defendant with custodial possession of a weapon (Pen. Code, § 4502, subd. (a)) on June 26, 2018 (count 1) and September 25, 2018 (count 2).[1]  Defendant was alleged to have a prior felony "strike" conviction (§ 667, subds. (b)–(i)).

_____

[1] Further undesignated statutory references are to the Penal Code. Defendant was also charged with custodial manufacture of a weapon (§ 4502,

A short jury trial began on December 30, 2019.

*Jury Trial Day 1*

On the first day of trial, the jury was selected, and the prosecution called witnesses John Franz, Kristopher Gisler, and Wayne Jack.

Pelican Bay State Prison Correctional Officer Franz testified that, on June 26, 2018, he was working as a recreation yard officer in Facility B, where defendant was housed. His job was to monitor inmates as they left their housing units and walked to the recreation yard. The inmates would be released from their cells a few at a time, and correctional officers stationed on either side of the walkway would search the inmates by patting them down before they entered the recreation yard.

Franz testified that inmates sometimes try to avoid being searched, and defendant frequently tried to get through the pat-down line without being patted down. That day, Franz called defendant over for a pat-down, and defendant complied. Franz felt a hard object in the chest pocket of defendant's shirt. The object was wrapped in a yellow piece of paper. Franz removed the object and paper from defendant's pocket, and the object slipped out of the paper and fell to the ground. It appeared to Franz that the object was an inmate-manufactured weapon; it was a piece of sharpened metal with cloth wrapped around it as a handle. Franz placed defendant in handcuffs, and another correctional officer, Kristopher Gisler, retrieved the object from the ground. Franz testified the object found on defendant was dangerous and could cause injuries.

Officer Gisler testified that he was standing next to Franz at the pat-down line and observed Franz pull some items out of defendant's shirt pocket.

_____

subd. (b); count 3), but that count was dismissed during trial at the request of the prosecution.

One of the items fell to the ground, and Gisler picked it up. He took photographs of the sharp object and the yellow piece of paper it was wrapped in, put them in an evidence bag, and placed the evidence bag in an evidence locker. Gisler also believed the object found on defendant was an inmate-manufactured weapon and described it as a "slashing device." The object was about two inches long, and the exposed metal part was about an inch long.

The prosecutor had Gisler open the evidence bag while he was testifying. She asked if there was any writing on the yellow piece of paper, and Gisler said he did not think so. He did not recall there being any identifying information on the paper. The prosecutor noted there was a signature at the bottom of the paper and asked if he knew whose signature it was. Gisler did not know. She asked if he had seen a document like it at the prison, and Gisler suggested, "It could be a receipt from the canteen store, but I couldn't say."

In cross-examination, Gisler agreed that a shirt pocket is not a good place for an inmate on his way to the recreation yard to try to hide contraband because the pocket would be subject to a pat-down search. Gisler also testified that the distance from defendant's building to the yard was probably 50 or 60 feet and that inmates sometimes engage with each other as they walk on the walkway. The inmates, however, are not allowed to stop, and they have to walk single file.

Officer Jack testified he was assigned to the segregated housing unit on the morning of September 25, 2018. Jack conducted a random search of defendant's cell. Defendant was the only inmate housed in the cell. Jack found two objects he identified as inmate-manufactured weapons; one was sitting on the desk and the other was inside a cookie tray on the desk. Jack described the objects as stabbing weapons.

3

*Jury Trial Day 2*

On the second day of trial, December 31, 2019, Jack's testimony concluded, and a prison evidence officer and a control booth operator testified. At 10:45 a.m., the parties discussed a piece of late discovery outside the presence of the jury. The prosecutor told the court, "[i]t wasn't until yesterday when we opened the evidence bag" related to count 1 that she noticed "a TX number" on the yellow piece of paper found in defendant's pocket, and she just learned that the number was a transaction number for a canteen purchase made by defendant. Defense counsel objected to admitting evidence that connected defendant to the yellow paper.

After a lunch recess, the prosecution sought to call a new witness, Grant Garrett, who could testify about the canteen transaction number on the yellow paper. Defense counsel objected. The trial court overruled the objection but gave defense counsel an opportunity to speak with the witness before he took the stand.

Garrett then testified that he oversaw the day-to-day operations of the canteens at Pelican Bay State Prison. He identified the yellow paper found in defendant's pocket as a receipt from the canteen for a purchase made by defendant.

In the afternoon, the jury was excused and the parties met in chambers to review jury instructions. The trial court instructed the jury at 4:10 p.m. The court instructed the jury on untimely disclosure of evidence (CALCRIM No. 306).[2] After closing arguments, the jury deliberated for about 20 minutes.

_____

[2] The instruction provided, "Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a

4

*Jury Trial Day 3*

On January 2, 2020, after deliberating for about 90 minutes, the jury reached a verdict finding defendant guilty of both counts. The same day, the trial court found the prior strike allegation true.

*Sentencing*

The court imposed the upper term of four years for count 1, a consecutive year (one-third the middle term) for count 2, and doubled the base term because of the prior strike conviction for a total sentence of 10 years.

## DISCUSSION

Defendant contends count 1 must be reversed because the prosecution violated the rules of discovery, thereby denying him a fair trial, and because defense counsel's failure to fully investigate the canteen receipt constituted ineffective assistance.

A.    *Background*

As we have described, the prosecutor noticed writing on the yellow paper on the first day of trial and then learned, on the second day of trial, that the paper was a receipt for a transaction defendant made at the prison canteen.

When the late discovery was first discussed on the record (on the morning of the second day of trial), the prosecutor told the court the information connecting the TX number on the yellow paper to a canteen transaction by defendant "just got handed to me." Objecting to allowing

fair trial.  [¶] The attorney for the People failed to disclose: Witness Grant Garrett and [an exhibit showing the prison's record of defendant's canteen transaction associated with the number on the yellow piece of paper] within the legal time period.  [¶] In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure."

5

evidence that the yellow paper was defendant's canteen receipt, defense counsel stated, "This is as late discovery as you can get it. That is obviously a significant piece of evidence that I did not have. [¶] I built my defense around a completely different scenario than springing essentially what is a fingerprint on me on the day of trial. And I would object to allowing this in at this late stage." Defense counsel argued the prosecution had the yellow paper since June 26, 2018, and it looked like there was a signature on the paper. He suggested he would have brought in a handwriting expert and "put on a completely different defense." He claimed, "I'm being sucked into a certain type of defense. [¶] It's like saying well, we have his fingerprints and here they are. To give that to me today, this morning, at the end of trial, I think it is absolutely an ambush and violative of due process. They had it in their possession over a year and a half and I'm getting it today."

The court asked whether defense counsel had the opportunity to look at the yellow paper in the previous year. Defense counsel admitted that he did, but he "didn't see the piece of paper." He and the prosecutor examined the evidence in November 2018, but, at that time, defense counsel was focused on the metal object, which he thought might be a "stinger" rather than a weapon.[3] He told the court, "I was in the same position as the People. It looks like a yellow piece of paper. There is no reference to say there is writing on it, identifying marks on it, it was an afterthought." Defense counsel continued, "And now we open it in trial . . ., it has got his writing on it; that's a different case. I would have advised him differently in terms of offers being made. It puts me at a huge disadvantage and embarrasses me

---

[3] Officer Franz explained a "stinger" is a metal object with prongs that fit in an electrical outlet and wires coming off it that prisoners use to heat up water.

before the jury by running the same type of argument and making me look like an idiot or disingenuous to them.  This undercuts my credibility with the jury which is essential to the defense."  He also suggested that if he had received the information earlier, he would have examined defendant's property logs and investigated how the canteen works.

Responding to defense counsel's reference to a plea negotiation ("offer"), the prosecutor stated the People had made an offer and "Defense has advised me that he has advised his client to take the same offer the entire time."

The trial court found both parties had prior access to the yellow paper and "there was a transaction ID number listed on it."  The court noted this was not *Brady* material (as it was not exculpatory).[4]  It found the prosecutor discovered the transaction number the previous day, followed up, and "disclosed this [new information] immediately and today.  So it appears to be timely in that regard.  And especially since all defenses and prosecutions should be based on the truth even if it has disadvantages or not; that aside, I'm going to allow it. . . . I will consider allowing, though, [defense counsel] some time to look into it as well."  Defense counsel stated, "I don't know how I can deal with it at this late stage."

At 1:47 p.m. on the second day of trial, the prosecution called canteen supervisor Garrett.  Defense counsel objected noting Garrett was not on the witness list.  He stated he did *not* think the prosecutor was "intentionally hiding something or trying to get me by surprise," but there is a presumption

---

[4] Under *Brady v. Maryland* (1963) 373 U.S. 83, 87, a prosecutor must disclose evidence "favorable to [the] accused" and "material either to guilt or to punishment."  (See also *Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 40.)

of knowledge.[5] Defense counsel further argued that he did not "have time to get someone who may have worked in the canteen to say that is not true."

The prosecutor reiterated, "As your Honor is aware, yes, . . . a receipt has been in evidence since June 26 of 2018 . . . . Counsel and I both looked at the weapon . . . in November of 2018. Both of us basically ignored the piece of paper, and it wasn't really until yesterday that I discovered that it actually had writing on it. So it's late discovery, but it was late discovered."

The court ruled Garrett could testify, explaining, "It looks like both sides have had access to this document that is in dispute for over a year. [¶] And it appears to me this is not a matter of an ambush. It was recently discovered literally yesterday by the prosecution. They have done their due diligence by disclosing immediately. [¶] I also note that time has not been waived for trial, this is literally the last day trial had been brought, which was Monday. What I'm going to do is allow it. I'm inclined to let [defense counsel] . . . speak to the witness, right here, now, since we are in trial, and give him an opportunity to do that and garner whatever information he deems necessary in protection for his client in preparation for a cross-examination." The court observed that evidence sometimes comes up during trial, and in this case "both sides have had the same opportunity to review the same evidence."

Defense counsel took up the court on its offer that counsel speak with Garrett before he testified.

---

[5] Here, defense counsel appears to be referring to the principle that evidence *favorable to the defense* known to the government is imputed to the prosecution. (See *In re Brown* (1998) 17 Cal.4th 873, 879.) But evidence showing the yellow paper wrapped around the sharpened metal object found in defendant's pocket was a receipt defendant received from the canteen is not favorable to the defense.

B.    *Discovery Rules*

Section 1054.1 requires the prosecuting attorney to disclose to the defendant or defense counsel the names and addresses of persons the prosecutor intends to call as witnesses and "[a]ll relevant real evidence seized or obtained as a part of the investigation of the offenses charged," among other things.  (§ 1054.1, subds. (a) and (c).)  This disclosure must "be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred.  If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred."  (§ 1054.7.)

"Upon a showing that [the prosecutor] has not complied with Section 1054.1 . . . and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order.  Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure."  (§ 1054.5, subd. (b).)  However, "[t]he court may prohibit the testimony of a witness . . . only if all other sanctions have been exhausted." (*Id.*, subd. (c).)

Among the primary purposes of the reciprocal discovery provisions of section 1054 et seq. are "promot[ing] the ascertainment of truth in trials by requiring timely pretrial discovery" and "sav[ing] court time in trial and avoid[ing] the necessity for frequent interruptions and postponements." (§ 1054, subds. (a) and (c).)  "These objectives reflect, and are consistent with,

9

the judicially recognized principle that timely pretrial disclosure of all relevant and reasonably accessible information, to the extent constitutionally permitted, facilitates 'the true purpose of a criminal trial, the ascertainment of the facts.' " (*In re Littlefield* (1993) 5 Cal.4th 122, 130–131.)

We review the trial court's rulings on discovery matters for abuse of discretion. (*People v. Ayala* (2000) 23 Cal.4th 225, 299.)

Defendant claims that the prosecutor's explanation that she did not discover that the yellow paper was a receipt until the start of trial is unpersuasive because an " 'individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.' " (*In re Brown*, *supra*, 17 Cal.4th at p. 879.) But no evidence was presented that any government actor knew before the second day of trial that the yellow paper found with the sharpened metal object was defendant's canteen receipt. Defendant also cites *In re Littlefield, supra,* 5 Cal.4th at page 133, in which our high court observed, "courts in general have discouraged the practice of *deliberately* failing to learn or acquire information that, under applicable statutes or case law, must be disclosed pretrial, concluding that such gamesmanship is inconsistent with the quest for truth, which is the objective of modern discovery." (Italics added.) But, again, no evidence (or argument) was presented that the prosecutor here deliberately avoided learning about the yellow paper until the trial started. To the contrary, defense counsel conceded he did not believe the prosecutor was "intentionally hiding" the information from him.

Defendant assumes that a discovery violation occurred in this case because evidence that the yellow paper was defendant's canteen receipt was not produced 30 days before trial. However, the discovery statutes contemplate evidence may be discovered at any time, and such evidence is

not automatically inadmissible. Instead, when "the material and information becomes known to, or comes into the possession of, a party within 30 days of trial," section 1054.7 requires disclosure "immediately." Here, the trial court found no discovery violation, finding the prosecutor disclosed the information "immediately" upon learning the paper was a canteen receipt and, thus, "it appears to be timely."

The Attorney General argues there was no discovery violation because the prosecutor disclosed the proposed testimony as soon as she became aware of it, and defendant does not respond to this argument in his reply. On this record, we cannot say the trial court abused its discretion in ruling that no discovery violation occurred. (See, e.g., *People v. Panah* (2005) 35 Cal.4th 395, 460 [prosecution's disclosure of report prepared within 30 days of trial was timely under discovery statutes].)

C.    *Assistance of Counsel*

Next, defendant argues defense counsel's failure to fully investigate the canteen receipt prior to trial constitutes ineffective assistance of counsel.

To prevail on a claim for ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's errors there is a reasonable probability that the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 693 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) "It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of

11

ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Defense "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (*Strickland*, *supra*, 466 U.S. at p. 691.) "[T]he 'seriousness of the charges against the defendant is a factor that must be considered in assessing counsel's performance.' " (*In re Jones* (1996) 13 Cal.4th 552, 566.)

The Attorney General notes that no one—not the prosecutor nor the correctional officers involved in the case—noticed the transaction number on the yellow paper or its significance "until the prosecutor fortuitously did so during the examination of a witness at trial," and argues deeming defense counsel "incompetent for failing to do so is inconsistent with the deferential standards of *Strickland*." We agree; under these circumstances, we are not prepared to find on direct appeal that defense counsel provided incompetent representation.

Further, even assuming deficient investigation, defendant fails to show prejudice. As the Attorney General points out, defendant does not explain how further investigation might have changed the significance of the yellow paper. Defendant suggests that defense counsel would have advised him differently on plea offers had he known the yellow paper was defendant's canteen receipt. But the record shows defense counsel did advise him to accept the prosecution's plea offer, and defendant rejected the

12

recommendation.[6] Moreover, "a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938.)

In short, defendant fails to show defense counsel provided inadequate representation to his prejudice.

## DISPOSITION

The judgment is affirmed.

---

[6] At sentencing, defense counsel told the court, "This is one of the few cases, your Honor, where in advance of trial I actually put on the record that I recommended that he take the offer that was being made by the DA, at that time, which was four years; I typically don't do that. . . . But it was just a stark difference of what he was facing versus what was being offered that I wanted it to be put on the record so he understood what he was facing."

_____

Miller, J.

WE CONCUR:


_____

Kline, P.J.


_____

Richman, J.


A160524, *People v. Hernandez*

14