Filed 5/1/14  P. v. Boyd CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049627 |
| v. | (Super. Ct. No. RIF1105003) |
| BOMANI LAWAN BOYD, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Elisabeth Sichel, Judge.  Affirmed in part and reversed in part.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUTION**

Defendant and appellant Bomani Boyd appeals from a conviction on two counts of attempted murder with gang and firearm enhancements after he shot at two members of a rival gang in Moreno Valley, seriously injuring one of them. The jury also found him guilty on a third count, for street terrorism, as the crimes were gang related. He has appealed on the grounds that some of the evidence introduced at trial was propensity evidence and unduly prejudicial. He has also protested that he cannot be convicted of street terrorism, because he acted alone.

We agree, as does the Attorney General, that Boyd's conviction for street terrorism must be reversed, in light of the California Supreme Court's decision in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), handed down some months after Boyd's trial. It was undisputed that Boyd acted alone, and, as the *Rodriguez* court held, a defendant acting alone cannot be guilty of street terrorism under Penal Code section 186.22, subdivision (a).[1] The rest of the judgment we affirm. Although it does not appear that Boyd preserved his evidentiary objections for appeal, the trial court was nonetheless within its discretion when it admitted evidence of prior uncharged acts, as this evidence was both relevant and not unduly prejudicial.

**FACTS**

While walking home from Moreno Valley High School on the afternoon of September 29, 2011, Shefner Moore, Brandon Davis and three female students encountered defendant Boyd on the street. Boyd shouted "West," and Davis responded "East." This was a gang challenge to a fight, and the would-be combatants took off their shirts and sought a secluded spot to follow through. Boyd, however, convinced Moore

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

and Davis that he was really from an affiliated gang, and there were handshakes all around.[2]  Neither Moore nor Davis knew or recognized Boyd.

The entire group continued walking toward the residences of some of the students.  Boyd then took out a gun and once again claimed to be from a rival gang. Davis and the girls ran away, but after Boyd stated he was just kidding, the group reassembled, Davis not wanting to leave Moore alone with Boyd.[3]  The group stopped before the remaining girls' residence to talk, and the girls then went inside.  Moore, Davis, and Boyd continued walking until Moore and Davis turned down a side street to go to Moore's house.  As they walked away, Boyd shouted to them that "Red" was nearby, and both boys turned back toward Boyd.[4]  As they did so, Boyd opened fire on both of them, announcing once again his affiliation with a rival gang, Edgemont Criminals.  Moore was hit in the head, neck, and abdomen; Davis escaped injury.

The police arrested Boyd after four witnesses (Davis and the girls who had walked home with him) picked him out of a photographic line-up.  He was charged with three counts, with enhancements.  The first count was attempted murder and infliction of great bodily injury on Moore, with firearm and gang enhancements.  The second was attempted murder of Davis, with firearm and gang enhancements.  The third was street terrorism.

Moore miraculously survived the shooting, although the doctors had to leave bullets and lead fragments in his brain, neck, and abdomen, for fear of causing

---

[2]  The investigating officer testified at trial that this was an unusual trick.  Pretending to be from a hostile gang would normally have been considered a violation of the gang code, even when done as a *ruse de guerre*.

[3]  One of the girls left the group after the gun was displayed.

[4]  "Red" was the gang moniker of a gang member who had recently assaulted a member of the gang to which Moore and Davis belonged and for whom they were therefore on the lookout.  Their gang was particularly outraged at the attack because the victim was a person of small stature.  Apparently the gang felt the assailant should have picked on someone his own size.

worse damage trying to dig them out.  He lost two segments of his small intestine, but otherwise made a remarkable recovery, considering the nature and extent of his wounds.[5]

Before trial began, the district attorney filed an issue brief on the gang evidence to be offered at trial.  Among the numerous items of proposed evidence were three convictions for residential burglary in June and October of 2010, while Boyd was still a juvenile, one of which included his admission to an arresting officer that a firearm found in the escape car was his.  During the pretrial hearing, Boyd's counsel objected in a general way to the gang evidence in total, as being cumulative and "overkill."  Counsel asked the court to limit the gang evidence – without specifying exactly what should be dropped out – for fear the jury would view it as propensity evidence.  There was also a non-specific objection to the evidence as more prejudicial than probative.

The court ruled that the evidence of the arrests could come in, as proof of Boyd's association with the Edgemont Criminals gang, and that this evidence was not more prejudicial than probative.[6]  Counsel and the court then examined some of the other gang evidence the district attorney planned to introduce, the court ruling that some of it could come in and excluding other portions.

In particular, three pending cases against Boyd were listed in the trial brief.  While investigating one of the cases, officers had found two loaded guns Boyd admitted were his.  Boyd's counsel objected to introducing evidence of pending cases against Boyd, but did not object to the introduction of the gun evidence.  With respect to this evidence, the court ruled that the district attorney could put on evidence about the guns, but not about the open cases.

_____

[5] Moore testified that he abandoned gang life, but not, as one might imagine, because his close brush with death operated as a wake-up call.  He told the jury he had expected his gang to retaliate against Boyd's gang, and when it did not, he decided that the unwritten pact between member and gang had not been fulfilled.  Evidently his gang agreed, and he was permitted to leave without being "jumped out" (i.e., severely beaten up), the customary farewell for a departing colleague.

[6] Boyd did not specifically object to the admission of the juvenile arrests.

4

At trial, a police expert testified as to Boyd's gang connections, his arrests (including the gun found in the car), the occasion when he admitted two handguns were his, and the significance of several photographs and cell phone videos showing Boyd in the company of known gang members.[7] According to the officer, residential burglaries are the Edgemont Criminals gang's "signature crime," and the persons arrested with Boyd for one of the burglaries were gang associates.

Boyd's defense at trial in April 2012 was an alibi defense. His several witnesses testified that he had been at a birthday party for his girlfriend during the entire afternoon of September 29 and could not possibly have been the shooter. These witnesses also testified that Boyd was not a gang member or involved with gangs.[8]

The jury convicted Boyd of all three counts and made true findings as to all the enhancements. He was sentenced to an indeterminate term of 55 years to life and a determinate term of 23 years.

## DISCUSSION

Boyd has raised two issues on appeal. One can be dealt with swiftly. Boyd asserts, and the Attorney General agrees, that the sentence for the third count, street terrorism under section 186.22, subdivision (a), must be reversed in light of the California Supreme Court's subsequently issued *Rodriguez* opinion.[9] In *Rodriguez*, the court held that a defendant cannot be convicted of a violation of section 186.22, subdivision (a), if he or she acted alone. (*Rodriguez, supra,* 55 Cal.4th at p. 1132.) Since it is undisputed that Boyd acted alone when he shot Moore and tried to shoot Davis, we agree that his sentence for count 3 must be reversed. (See *People v. Sanchez* (2014) 223 Cal.App.4th 1,

---

[7] The jury heard testimony about what must have seemed to them a bewildering array of gangs, subgangs, associated gangs, and gang rivals in the area, reminiscent of Italy in the time of the de Medici. Moreover, these associations and rivalries were constantly in flux, so a friend of today could be tomorrow's foe.

[8] One of Boyd's witnesses testified he and Boyd went on a church retreat during the weekend following the shooting. He also said he had never seen Boyd with any guns.

[9] The court issued *Rodriguez* in December 2012, more than eight months after the conclusion of Boyd's trial. The opinion resolved a conflict in the Courts of Appeal as to whether a gang member acting alone could be convicted under section 186.11, subdivision (a). (*Rodriguez, supra,* 55 Cal.4th at p. 1128.)

5

4-5.)  Because the sentence was stayed under section 654, this reversal has no effect on his actual prison term, and the matter does not have to be remanded for resentencing.

Boyd's other issue involves gang-related evidence.  Our first order of business with respect to this issue is to determine what we are to review.

The introduction to the argument section of Boyd's opening brief identifies the admission of two categories of evidence as reversible error.  The first is evidence of the three burglary offenses, which took place while he was still a juvenile.  The second is evidence regarding his possession of guns, specifically a video of Boyd with several gang members in which he flashed a gun (along with two admissions to police that some nearby guns were his; one of the admissions occurred during a burglary arrest, and the other during the investigation of a pending case, evidence of which case was excluded).

The first question we ask is whether Boyd preserved this issue for review. "'"[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal."' [Citation.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

At the pretrial hearing, in response to the People's issue brief on gang evidence,  Boyd's counsel made a general objection to "all this gang evidence," and "all this evidence which may support the fact that Mr. Boyd was either an associate or possibly a member of the Edgemont gang," recommending "a limitation on some of this evidence that is going to be attempted to be presented, because I do think the jury is simply going to view this as propensity evidence . . . and be unable to assimilate [*sic*] some of this gang stuff from the true issue in the case . . . ."  Counsel did not articulate at that point what part of the "gang stuff" should be excluded.  He later specifically objected to some of the evidence the district attorney planned to introduce, but not to the evidence identified on appeal, except for the video.  At trial, the People's witness testified about the arrest history and the firearms evidence without any objection from Boyd.

On appeal, Boyd has zeroed in on the three juvenile burglary arrests and three pieces of evidence regarding his possession of guns. At the time of the pretrial hearing, however, the burglary arrests and the firearms evidence (except for the video) formed part of the amorphous "gang stuff." There was certainly far more gang evidence on offer than the burglary arrests and the firearms evidence.

So far as the record reveals, Boyd never objected to the admission of evidence regarding his burglary arrests on any grounds. Under Evidence Code section 353, subdivision (a), a judgment cannot be reversed for erroneous admission of evidence unless " [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." (See *People v. Jones* (2013) 57 Cal.4th 899, 977; *People v. Holford* (2012) 203 Cal.App.4th 155, 168-169 [objection to specific evidence required].) He also failed to object to the testimony about his admissions of gun possession at trial.[10] It therefore does not appear that he preserved objections to most of the evidence he now objects to on appeal.

## I.         Burglary Arrests

Even if we entertained Boyd's arguments about the admission of evidence of his prior arrests, we would uphold the trial court's decision. Boyd argues that the three arrests were nothing more than propensity evidence, prohibited under Evidence Code section 1101, subdivision (a), and more prejudicial than probative under Evidence Code section 352. We review the trial court's decision whether to admit evidence for abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.)

---

[10]     The only item of evidence to which Boyd specifically objected below and has raised on appeal is the video showing him with a gun. The trial court reviewed the video and stated, "I think the portion where the gun is flashed is not unduly prejudicial. [¶] The issue I have is it shows his commitment to the gang and the gang lifestyle, and therefore I think it's highly relevant. I don't find that it's unduly prejudicial. It's a very short, quick section of the video where the gun is shown. It's not pointed at anyone. It's just flashed, and I think it is indicative of the defendant's loyalty to the gang and what he's willing to do for the gang. I think the probative value is pretty high, and I think the prejudicial value is low. I'm going to allow it in."

Evidence Code section 1101, subdivision (a), provides: "Except as provided in this section . . ., evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Evidence Code section 1101, subdivision (b), provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." "Evidence of other crimes is admissible only if relevant to prove a material fact at issue, separate from criminal propensity." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 14.)

Unquestionably the evidence regarding Boyd's prior arrests and association with Edgemont Criminals gang members was relevant, even leaving aside the third count for street terrorism. The People sought a finding under section 186.22, subdivision (b), a gang enhancement for the underlying felonies. The district attorney therefore had to prove that Boyd had committed a felony (1) "for the benefit of, at the direction of, or in association with any criminal street gang" and (2) that he had committed the felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) The burglaries tended to prove both Boyd's desire to benefit his gang and his specific intent to promote his gang's criminal conduct, by intimidating or eliminating members of a rival gang.

The evidence of Boyd's prior arrests was not propensity evidence. He was arrested for burglary, not for gunning people down in the street. Nor did the evidence tend to prove a general tendency to commit criminal acts. As the trial court stated when it ruled on the video, what the evidence showed was the depth of his commitment to the Edgemont Criminals. He was not merely hanging about the gang's fringes, hoping to be taken for a tough guy without really getting involved in gang activities. Instead, he was

8

caught participating in the gang's "signature crime" . . . and more than once. This evidence was relevant to the gang association element the district attorney had to prove to get a true finding on the gang enhancements. "'As long as there is a direct relationship between the prior offense and an element of the charged offense, introduction of that evidence is proper. [Citations.]'" (*People v. Butler* (2005) 127 Cal.App.4th 49, 60.)

The evidence was also relevant to the issue of motive. "Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.) Without the detailed explanation of gang culture, the jury may well have found it incomprehensible that an eighteen year old would stalk and shoot at two absolute strangers who were in many respects mirror images of himself. Even knowing something about gangs, the jury could well have doubted that Boyd was sufficiently ensnared in gang culture and values to try to kill two young men whom he had encountered for the first time in the street. By showing how thoroughly Boyd had bought into the whole gang ethos, the People could overcome any such skepticism and make sense of an otherwise "senseless" crime. "Gang evidence was critical to explaining, not [Boyd's] general disposition to kill, but the special motive for killing [Moore and Davis]." (*Id.* at p. 1169.) The evidence was also relevant to rebut the church-going image of Boyd the defense witnesses endeavored to convey to the jury.

Boyd's second objection to the admission of the juvenile arrests is that it should have been excluded under Evidence Code Section 352 as more prejudicial than probative. Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In deciding whether to admit uncharged acts evidence over an objection based on Evidence Code section 352, the court balances its probative value against four

factors: "(1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.)  We review the court's decision to admit or exclude evidence under this statute for abuse of discretion.  (*Ibid.*, see also *People v. Cole* (2004) 33 Cal.4th 1158, 1195.)  "[A] trial court's determination 'will not be overturned on appeal in the absence of a clear abuse of that discretion, upon a showing that the trial court's decision was palpably arbitrary, capricious, or patently absurd, and resulted in injury sufficiently grave as to amount to a miscarriage of justice.'  [Citation.]" (*People v. Lamb* (2006) 136 Cal.App.4th 575, 582.)

The question is not whether the evidence is prejudicial; if it were not prejudicial to some degree, it would not be relevant.  The question is whether it is *unduly* prejudicial, that is, likely to evoke an emotional response in the jury and therefore divert it from considering the evidence logically and dispassionately.  (*People v. Karis* (1988) 46 Cal.3d 612, 638.)  And for suppression, its prejudicial impact must *substantially* outweigh its probative effect.

Boyd appears to argue on this point that the district attorney had so much evidence of Boyd's affiliation with the Edgemont Criminals gang that the burglary arrest evidence was unnecessary and therefore prejudicial.  This is an odd argument to make at this point in the trial, since one of the themes of the defense was that Boyd was not a gang member. Boyd also argues that this evidence was "cumulative" and therefore prejudicial. "Cumulative" means "repetitive" or "additional," implying that other evidence on the subject has already been introduced.  (See *People v. Filson* (1994) 22 Cal.App.4th 1841, 1850, overruled on other grounds in *People v. Martinez* (1995) 11 Cal.4th 434.)  At that point in the trial, however, the only evidence of Boyd's gang affiliation were pictures and videos showing him in the company of gang members and admissions to correctional officers that he didn't "get along" with members of Moore's and Davis's gang and did

10

not want to be jailed with them.  Participating with members of Edgemont Criminals in its "signature crime" was clearly far more powerful evidence of his gang membership. "Evidence that is identical in subject matter to other evidence should not be excluded as 'cumulative' when it has greater evidentiary weight or probative value." (*People v. Mattson* (1990) 50 Cal.3d 826, 871.)

The trial court acted well within its discretion when it admitted evidence of the burglary arrests Boyd now disputes.[11] All four *Branch* factors militate in favor of admitting this evidence.  While residential burglaries are, of course, deplorable, evidence of their commission is not by its nature inflammatory.  Such crimes do not involve physical injury to innocent people or violent death.  There was little or no danger of confusion of issues.  Boyd was not on trial for burglary, but rather for attempted murder. The jury would be unlikely to confuse the two crimes.  The offenses were committed within the preceding 18 months, so they were not unduly remote in time.  Finally, the amount of time spent introducing the evidence was minimal.  One person testified briefly as to these crimes, and on cross-examination, they were mentioned in one question and answer.

The point of the evidence is not primarily that Boyd committed burglaries, but that he did so with other members of the Edgemont Criminals gang or to prove himself worthy of being a gang member.  Boyd's gang membership was one of the core issues of the People's case, and evidence about it was especially important as Boyd's witnesses emphatically denied that he had anything to do with gangs at all.  The burglary arrest evidence was properly admitted.

---

[11] At one point, Boyd argues that the court could have admitted the "arguably relevant" fact of his arrest for burglary without telling the jury that he had admitted guilt.  In another part of the brief, however, Boyd argues that the burglaries were not relevant at all.

## II.          Gun Possession

On appeal, Boyd also argues the evidence of gun possession, like the burglary arrests, should have been excluded as both unduly prejudicial and as propensity evidence.  Again, we review this evidence for abuse of discretion.  *People v. Cole, supra,* 33 Cal.4th at p. 1195.)

The evidence of Boyd's admissions regarding possession of firearms and the video showing him with a gun were both relevant to the material acts in the case, the attempted murder of Moore and Davis with a firearm.  The evidence did not show that Boyd had a propensity to shoot people – none of the evidence suggested he ever used the guns – but rather that he had easy access to and familiarity with firearms.  This evidence was relevant to the identification of Boyd as the shooter, in the face of a defense witness's denial that he had ever seen Boyd with a gun.

Likewise the evidence of Boyd's gun possession was not inflammatory, unduly remote, confusing, or too time-consuming, all elements to be considered in excluding evidence under Evidence Code section 352.  The evidence did not present him as regularly using weapons on people, and the admissions he made to investigating officers were all relatively recent, as was the video.  The time consumed in presenting this evidence to the jury was short:  the video was played, two witnesses answered a few questions about it, and the gang expert testified about the admissions.  The expert was not cross-examined about the video or the admissions.

The problem with the evidence from Boyd's point of view was that so much of it contradicted the impression his witnesses tried to make on the jury that he was not involved with gangs.  In view of the high standard of proof the district attorney had to meet and of Boyd's own defensive strategy, the evidence was correctly admitted.

## DISPOSITION

Boyd's conviction on the third count for street terrorism under section 186.22, subdivision (a), is reversed.  Because the sentence for this count was stayed under section 654, there is no need to remand the matter for resentencing.  In all other respects, the judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.