[No. C046556. Third Dist. Jan. 31, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY LAMB, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I.C., II., III., and IV. of the Discussion.

**COUNSEL**

Marcia C. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Ward A. Campbell and Patrick J. Whalen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

HULL, J.—After taking pain medication and drinking enough beer and tequila to register a 0.22 percent blood-alcohol content, defendant Timothy Lamb drove his truck down a two-lane road at speeds nearly twice the posted speed limit. He lost control of his vehicle, crossed the center line, hit one car and injured its driver, then hit a second car and killed its driver.

A jury acquitted defendant of murder (Pen. Code, § 187, subd. (a)—count 1; unspecified statutory references that follow are to the Penal Code) and found untrue allegations that the driver of the first car suffered great bodily injury (§ 12022.7, subd. (a)). However, the jury convicted defendant of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)—count 2), driving under the influence (DUI) causing injury (Veh. Code, § 23153, subd. (a)—count 3), and causing injury by driving with a blood alcohol level of more than 0.08 percent (§ 23153, subd. (b)—count 4). The jury also found true various charged enhancements, including that defendant personally inflicted death on one person (§ 12022.7, subd. (a)), injured more than one victim (Veh. Code, § 23558), and had a blood alcohol level of at least 0.20 percent (Veh. Code, § 23578). The trial court found true defendant's two prior DUI convictions.

Sentenced to an aggregate prison term of 17 years to life, defendant appeals, asserting that (1) the court erroneously concluded that defense counsel failed to disclose evidence as required under the discovery statutes and then abused its discretion in imposing sanctions for that violation, (2) the court was biased against him, (3) cumulative error compels reversal, and (4) his convictions on counts 3 and 4 must be reversed because they are necessarily included offenses of count 2. We affirm the judgment.

FACTS AND PROCEEDINGS

At approximately 10:30 p.m., Amador County Sheriff's Officer Jeff Milbourne was driving southbound on New York Ranch Road at less than the posted 35 miles per hour speed limit. As he approached a bend in the road, he noticed a truck speeding in the opposite direction; Milbourne estimated the truck was traveling at 65 to 70 miles per hour. The truck crossed the center line and Milbourne jerked his car to the right to avoid a collision. As he looked in his rear view mirror, he saw that the truck had collided with the car that had been behind him. The truck went on to hit a second car, killing its driver.

The driver of the first car, Mary Abello, described driving behind the sheriff's car and seeing the oncoming truck, which was "zigzagging" back

and forth over the center line at a speed she estimated at 50 to 60 miles per hour. She tried to avoid the truck by pulling over to the right side of her lane, but the truck hit her, spinning her car across the roadway.

Officers investigating the accident found defendant sitting at the wheel of the truck. He told one officer that a car had come into his lane. In response to questioning, he told the officer that he had not had anything to drink that night.

Another officer talked to defendant at the hospital. Defendant said that he had been driving at 35 to 40 miles per hour and that another car had "interfered with him." Defendant's breath smelled of alcohol, his speech was slightly slurred, and his eyes were watery and bloodshot. Defendant again denied having had anything to drink, but upon further questioning, said he had had "just a little." The officer tried to administer a preliminary alcohol screening test, but defendant repeatedly blocked the air tube with his tongue to prevent his breath from entering the device.

Defendant's blood was drawn at approximately 11:50 p.m., nearly 90 minutes after the accident. Defendant had a blood-alcohol content of 0.22 percent. Defendant had admitted taking Vicodin that day to relieve pain from a knee injury, and blood tests confirmed the presence of that painkiller.

Defendant was charged with murder (count 1), gross vehicular manslaughter while intoxicated (count 2), DUI causing injury to Frank Johnson and Abello (count 3), and causing injury to Johnson and Abello while driving with a blood-alcohol level of at least 0.08 percent (count 4). Count 2 included an allegation that defendant had two prior DUI convictions. The information also charged numerous enhancements, including that defendant caused death to Johnson and great bodily injury to Abello and that defendant caused injury to more than one victim.

At trial, Officer Milbourne and Abello described the accident and their observations of defendant's driving. Milbourne testified that he was absolutely certain that he saw defendant cross the center line and enter the opposing lane. He was also certain that defendant was speeding at approximately 65 to 70 miles per hour. Abello was equally sure that defendant was speeding and lost control of his truck.

The prosecution introduced a surveillance videotape that, according to expert witnesses, showed defendant driving at 72 miles per hour at a spot less than a mile before the accident site.

A criminalist opined that a person with a 0.22 percent blood-alcohol level would be unable to drive safely. A toxicologist testified that the use of a

painkiller would make this impairment worse, and that the combination would make an individual an unsafe driver.

Expert witnesses for the prosecution and defense testified at great length, giving competing explanations of evidence found at the scene and the cause of the accident. The prosecution contended that defendant drove over the center line and into the two vehicles. Defendant argued that Abello caused the accident when she crossed into the lane of opposing traffic while passing Johnson's car.

DISCUSSION

I

*Violation of Discovery Rules and Resulting Sanctions*

Defendant challenges the court's determination that defense counsel violated discovery rules by failing to disclose information from his accident reconstruction expert. He also challenges the propriety of the sanctions imposed by the court for this violation. We discuss each claim in turn.

A. *Discovery Violation*

Section 1054.3 provides in relevant part that "[t]he defendant and his . . . attorney shall disclose to the prosecuting attorney: [¶] (a) The names and address of persons . . . he . . . intends to call as witnesses at trial, *together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case,* and including the results of physical . . . examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial." (Italics added.)

At trial, the prosecutor complained that he had received no discovery from Ralph Todd, defendant's accident reconstruction expert. Defense counsel responded that no disclosure was required because Todd had not prepared any written reports. Any notes Todd had, counsel argued, were preliminary in nature and not discoverable. Counsel asserted that no report was prepared because defendant could not afford to have one written.

In a discussion with the trial court, Todd mentioned that written reports are sometimes not prepared in order to avoid discovery. Todd and counsel both acknowledged that they had had numerous conversations and meetings about the accident to discuss Todd's theory as to the accident's cause. Todd's notes involved witness interviews, calculations, and his inspection of the cars

involved in the accident. Todd said he conveyed the information contained in these notes in general terms to defense counsel.

The trial court concluded that defense counsel had deliberately withheld information from the prosecutor in violation of discovery rules. The court permitted Todd to testify but imposed other sanctions, as discussed later.

Defendant contends the court erred in concluding a discovery violation had occurred. We do not agree.

Defendant's argument is predicated in large part on his belief that it is only written reports of an expert that must be disclosed to the prosecution. He asserts that because no such report was prepared, and because there is no requirement that counsel obtain a written statement from a witness (see *In re Littlefield* (1993) 5 Cal.4th 122, 136 [19 Cal.Rptr.2d 248, 851 P.2d 42]), there was no discovery violation. He also asserts that Todd's notes reflected only interim conclusions, not final opinions, and therefore were not discoverable. (See *Hines v. Superior Court* (1993) 20 Cal.App.4th 1818, 1823 [25 Cal.Rptr.2d 712].) Defendant reads the requirements of section 1054.3 far too narrowly.

█ As previously noted, section 1054.3 requires a defendant to disclose not only written reports, but also "any reports or statements of experts made in connection with the case." Todd stated that while he had not prepared any reports, he had made notes about the interviews with witnesses, had made calculations to determine the cause of the accident, had made notes about his inspections of the vehicles, and had conveyed this information to defense counsel. Over the course of several meetings, Todd had explained his theories to defense counsel. Todd said he had formed his opinion as to the cause of the accident soon after October 1, 2003, and had conveyed that opinion orally to defense counsel. None of this information had been disclosed to the prosecution before trial began in mid-November.

Defense counsel failed to disclose the "statements of experts made in connection with the case" as required by the express language of section 1054.3. (See *Roland v. Superior Court* (2004) 124 Cal.App.4th 154 [21 Cal.Rptr.3d 151].) The court properly concluded that this type of gamesmanship constitutes a discovery violation.

In a two-sentence aside, defendant asserts that Todd's notes were not discoverable because they fell within the attorney work product doctrine. Defendant did not raise this claim in the trial court, and we therefore do not consider it here.

## B. *Denial of Right to Surrebuttal*

In response to Todd's testimony, the prosecution introduced rebuttal testimony from Robert Snook, who supervised the work of the multidisciplinary accident investigation team on this accident. Snook was very critical of Todd's analysis and conclusions, and he explained why the accident could not have occurred as Todd had described. He also disagreed with Todd's testimony that defendant could not have been traveling at the speed witnesses had estimated.

Defendant cross-examined Snook, and then sought to have Todd or Todd's associate defend their work in surrebuttal testimony. The trial court denied defendant that opportunity, stating that if defendant presented such evidence, the prosecution might want "to bring in another witness to say, 'Oh, yes, it is a physical impossibility.' Then maybe you would want to bring in more witnesses to testify, 'oh, it's not a physical impossibility,' and we would go on endlessly on that subject . . . . [¶] I am going to remind you that all of this could have been avoided if you had complied with the discovery rules. The purpose of the discovery rules under Proposition Number 115 as specified in Section 1054 is to promote the ascertaining of truth in trial by requiring timely pre-trial discovery and also to save the Court time in trial and avoid the necessity for frequent interruptions and postponements. [¶] For these reasons, your request is denied."

Defendant contends that the court abused its discretion in precluding surrebuttal testimony as a discovery sanction. Defendant fails to recognize that the court's ruling had two different rationales. Surrebuttal was precluded (1) as a sanction for violating discovery rules and, implicitly, (2) as unduly time consuming and potentially prejudicial under Evidence Code section 352. Under either theory, the court's ruling was proper.

■ "We generally review a trial court's ruling on matters regarding discovery under an abuse of discretion standard. [Citation.] In particular, 'a trial court may, in the exercise of its discretion, "consider a wide range of sanctions" in response to [a] violation of a discovery order.' " (*People v. Ayala* (2000) 23 Cal.4th 225, 299 [96 Cal.Rptr.2d 682, 1 P.3d 3].)

Defendant contends the court erred in precluding surrebuttal testimony because section 1054.5, subdivision (c) cautions that the court "may prohibit

the testimony of a witness [as a sanction for violating discovery rules] only if all other sanctions have been exhausted . . . ." Defendant asserts less extreme sanctions were available in the present case.

Here, however, the court did not exclude the testimony of Todd. Todd and his associate testified at great length to explain their investigation and conclusions. The court's sanction was limited in scope, and extended only to refusing to permit additional surrebuttal testimony. The trial court did not abuse its discretion in concluding that defendant had had a more than adequate opportunity to present its case and that counsel's willful discovery violation warranted a limitation on surrebuttal.

But even if we were to conclude that this sanction was inappropriate, the court's decision was nonetheless proper under Evidence Code section 352. Rulings under Evidence Code section 352 are reviewed under an abuse of discretion standard, and a trial court's determination "will not be overturned on appeal in the absence of a clear abuse of that discretion, upon a showing that the trial court's decision was palpably arbitrary, capricious, or patently absurd, and resulted in injury sufficiently grave as to amount to a miscarriage of justice." (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1385 [112 Cal.Rptr.2d 620].)

█ A trial judge may limit the scope of surrebuttal evidence to prevent repetition of matter that should have been covered in the original case or to prevent unfairness to the other party. (See 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 546, pp. 782–783.) Here, defendant presented his expert's testimony at length and cross-examined Snook, the prosecution's rebuttal witness. Any additional testimony explaining why defendant's theories were plausible and more credible than that of the prosecution witnesses would have been repetitive and time consuming in an already lengthy and, at times, tedious trial. The trial court reasonably anticipated an unending parade of witnesses to contradict the testimony offered by the other side. Under these circumstances, the trial court properly exercised its discretion to preclude additional surrebuttal testimony.

I.C.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 575.

DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Davis, J., concurred.

On February 28, 2006, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 14, 2006, S141100.