WALLACE, Judge,
Concurring in the result.
The plain language of rule 3.220(d)(l)(B)(ii) supports the trial court’s order requiring Ms. Kidder to provide the State with a copy of Wuesthoff s report concerning the results of the blood alcohol analysis. If Ms. Kidder had not elected to participate in reciprocal discovery under the rule, the entry of an order requiring the defense to disclose to the prosecution evidence that it did not intend to use at trial would likely violate Ms. Kidder’s rights under the United States Constitution. See generally, Eric D. Blumenson, Constitutional Limitations on Prosecuto-rial Discovery, 18 Harv. C.R.-C.L. L.Rev. 123 (1983) (discussing the constitutional implications of discovery by the prosecution and the limitations on such discovery imposed by the United States Constitution); Robert P. Mosteller, Discovery Against the Defense: Tilting the Adversarial Balance, 74 Calif. L.Rev. 1567 (1986) (discussing limitations on discovery by the prosecution against the defendant imposed by the Fifth and Sixth Amendments to the United States Constitution, attorney-client privilege, and the work product doctrine). However, as Judge Ca-sanueva observes in his thoughtful opinion for the majority, Ms. Kidder had the option of electing not to participate in the discovery process. If Ms. Kidder had declined to participate in reciprocal discovery, she would not have been required to give the prosecution materials such as the results of Wuesthoff s blood alcohol analysis. Because the obligation to turn over the results of the test flowed solely from Ms. Kidder’s voluntary election to obtain the advantages of receiving discovery from the prosecution, I concur in the result reached by the majority. I also agree that the results of Wuesthoffs blood alcohol analysis do not constitute work product that is protected from discovery under rule 3.220(g)(1).
The Supreme Court of Florida first adopted rules of criminal procedure that included provisions for reciprocal discovery in 1967. The new rules became effective on January 1, 1968. In re Florida Rules of Criminal Procedure, 196 So.2d 124, 124 (Fla.1967). Rule 1.220 addressed the subject of “DISCOVERY.” Id. at 151-55. Under subsection (a) of this new rule, the defendant could obtain discovery from the State by motion. If the court required the prosecution to produce test results and reports and documents and other tangible objects for inspection, copying, and photographing, then the defendant had the obligation under subsection (c) of the new rule to disclose similar items to the prosecution:
(c) Reciprocal Discovery .-If the court grants relief sought by the defendant under (a)(2), or (b) of this rule, it shall condition its order by requiring that the defendant permit the state to inspect, copy or photograph scientific or medical reports, books, papers, documents, or tangible objects which the defendant intends to produce at the trial and which are within his possession, custody, or control.
Id. at 151. Notably, the provisions of the new reciprocal discovery rule concerning the reports or statements of experts did not require the defendant to provide the prosecution with such materials unless the defendant intended to use them at trial.
In 1972, the Supreme Court of Florida made extensive amendments to the criminal rules. The changes became effective on February 1, 1973. In re Florida Rules *1176 of Criminal Procedure, 272 So.2d 65, 65 (Fla.1972). The amendments to the discovery rule eliminated the need for court intervention and made the reciprocal discovery provisions self-executing. Id. at 105-10. Under subsection 3.220(b)(4)(ii) of the 1972 rules, a defendant electing to participate in reciprocal discovery was required to disclose to the prosecution “[Reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons.” Id. at 107. The 1972 amendment to the discovery rule deleted the limitation providing that the defendant was required to produce reports or statements of experts only if he or she intended to use such materials at trial. Neither the Supreme Court of Florida nor the Special Advisory Committee[5] addressed the reason for this major change in the extent of the defendant’s obligation to provide reciprocal discovery to the prosecution. The absence of any comment on such a major change raises the question of whether it may have resulted from an oversight. Although the court has amended the reciprocal discovery rules several times since the 1972 revision, the defendant’s obligation to provide reports and statements of experts — without regard to whether the defense intends to use them at trial — has remained unchanged in the rule to the present.
In the forty years during which the reciprocal discovery rules have been in their current form, the Florida courts have disposed of millions of criminal cases.[6] It is remarkable that during this forty-year period, there has not been — until now — a single reported Florida case in which the State has sought the entry of an order requiring the defense to disclose to the prosecution the report or statement of an expert that the defendant did not intend to use at a hearing or in trial. Here, the significance of this fact lies not in what has happened but instead in what has not happened. Thus it is appropriate to ask why — over a forty-year period involving millions of criminal prosecutions — there has been no reported instance in Florida of an effort by the prosecution to obtain reports or statements of experts that the defendant does not intend to use at trial.
I suggest that there are three possible answers to this question. These explanations overlap; they are not mutually exclusive. First, it may be relatively easy for the defense to evade any obligation under the reciprocal discovery rule to disclose such materials to the prosecution. Defense counsel may request the expert to make any report of a “bad” result orally and to provide a written report only if the result is favorable to the defense. See, e.g., People v. Lamb, 136 Cal.App.4th 575, 40 Cal.Rptr.3d 609, 612 (2006) (noting a statement by a defense accident reconstruction expert “that written reports are sometimes not prepared in order to avoid discovery”). Second, despite the plain language of rule 3.220(d)(l)(B)(ii), prosecutors, defense attorneys, and trial judges may share an assumption that a defendant’s obligation to provide reciprocal discovery under the rule is limited to items that the defense intends to use at trial. Such an understanding would be consis *1177 tent with Federal Rule of Criminal Procedure 16(b)(1)(B) (the comparable federal rule) and with Florida Rule of Civil Procedure 1.280(b)(5)(B). Third, under our ac-cusatorial system of criminal justice, the defendant generally may not be compelled to assist the prosecution in proving his or her guilt. Instead, we have traditionally relied on “a judicial system in which even the guilty are not to be convicted unless the prosecution ‘shoulderfs] the entire load.’ ” Tehan v. United States ex rel. Shott, 382 U.S. 406, 415, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); cf. Blumenson, supra at 176-77 (discussing the extent to which the decision in Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), and rules authorizing prosecutorial discovery of the defense case have made inroads on the accusatorial system). These fundamental tenets of our criminal justice system are so ingrained in lawyers that they may engender a certain restraint that disinclines prosecutors from seeking the production of materials that the defense does not intend to use at trial.
Whatever the reason for the absence of any reported appellate opinions in Florida on this topic, the publication of the court’s decision in this case is likely to change the legal landscape for both prosecutors and defense counsel. Prosecutors will now be encouraged to seek, and defense counsel may be obligated to disclose, the reports and statements of experts whether or not the defense intends to use them at trial.[7] The decision in this case may provide the prosecution with a limited and short-term tactical advantage in Ms. Kidder’s case.[8] However, I believe that our decision will have negative effects in the long term for the criminal defense bar, the State, and the courts.
The effect of our decision will be to confront defense counsel with a dilemma. In most instances, defense counsel will wish to participate in reciprocal discovery to obtain the names and addresses of the State’s witnesses and to learn the nature of the State’s evidence. Generally speaking, such information is essential to the effective representation of the client. Nevertheless, a decision made at the outset of the case to participate in reciprocal discovery may subsequently require defense counsel to produce a report or statement of an expert that is damaging to the defense even if defense counsel does not intend to use the report or statement at trial. Early in the progress of the case, when defense counsel generally makes the decision to participate in reciprocal discovery, he or she may be unaware that a consultation with an expert will become necessary. Defense counsel will almost surely be unaware of the nature of any *1178 potential test results. In the event defense counsel must disclose an adverse test result or report to the prosecution, the defendant may blame defense counsel for electing to participate in reciprocal discovery. On the other hand, an election not to participate in reciprocal discovery may limit defense counsel’s ability to investigate fully the State’s case against his or her client and to provide effective representation. Under these circumstances, defense counsel faces the risk that the defendant will fault him or her no matter which course counsel decides to pursue.[9]
However, the impact of the dilemma described above will not be limited to the criminal defense bar. The unfortunate dynamics of this situation are likely to give rise to a new variety of ineffective-assistance-of-counsel claims under rule 3.850. Everyone involved — defense counsel, prosecutors, and the courts — will be required to devote scarce resources to addressing such claims. To the extent that the reports and statements of experts constitute work product, they will remain off limits to prosecutors. To the extent that such reports and statements are not work product — as in this case — the State may win a limited, short-term advantage through the discovery of materials that the defense does not intend to use at trial. Nevertheless, I doubt that any such short-term tactical advantage in a particular case warrants the additional use of scarce resources in the criminal justice system as a whole that the court’s decision may cause.
For the reasons outlined above, I suggest that the Criminal Procedure Rules Committee of The Florida Bar may wish to consider whether rule 3.220(d)(l)(B)(ii) should be amended to limit the defense obligation under reciprocal discovery to provide the prosecution with reports or statements of experts. Such a limitation might require the defendant to disclose the reports and statement of experts only if the defendant intends to use such materials at trial or if the defendant intends to call the expert who prepared the report as a witness and the subject matter of the report relates to the expert’s testimony. Such an amendment would make the defendant’s obligation to disclose such materials under the Florida rules comparable to the defendant’s obligation under the federal criminal rules. See Fed.R.Crim.P. 16(b)(1)(B). Such an amendment would avoid the dilemma for defense counsel described above and should not hinder the prosecution in the preparation of its cases.

. The Special Advisory Committee provided "Committee Notes” on the revision to the criminal rules of procedure.

. In fiscal year 2011-2012 alone, the Florida courts disposed of 990,159 criminal cases. This total includes 187,330 circuit court cases and 802,829 county court cases. See Fla. Office of the State Courts Adm'r, FY 2011-12 Statistical Reference Guide, 3-1 and 7-1, available at http:/ Avww.flcourts.org/gen_ public/stats/reference_guidel l_12.shtml and 18.2.3(a), 169-70.

. Of course, the defendant’s obligation to disclose the reports and statements of experts will be limited to the extent that such materials constitute work product under rule 3.220(g)(1).

. The State had already obtained an analysis by FDLE of one of the blood samples. The result of the blood alcohol analysis prepared for the State by FDLE was 0.196, more than double the amount necessary to establish an unlawful blood alcohol level. See § 316.193(1 )(b), Fla. Stat. (2009). At the hearing on the State's motion to compel reciprocal discovery, the trial judge asked the prosecutor, "Does the State have some corn-pelling need to get [the Wuesthoff report]?” The prosecutor responded, "Well, yes, I would think so, Your Honor, because ... [i]t corroborates whether or not our — our blood test is correct ... which we have disclosed to [defense counsel].” The prosecutor also said, "And I suspect that [defense counsel] may use some of the information that he has in order to challenge our blood test.” However, the prosecutor did not explain why there was any reason to doubt the accuracy of the FDLE analysis. And Ms. Kidder’s counsel represented to the trial court that he did not intend to use the Wuesthoff report at trial.

. The dilemma the court's decision creates is similar to the dilemma defense counsel occasionally faced before the Supreme Court of Florida amended rule 3.250 and added rule 3.381 to eliminate the "sandwich.” See In re Amendments to the Florida Rules of Criminal Procedure — Final Arguments, 957 So,2d 1164 (Fla.2007). Before the amendments to the rules, circumstances might force defense counsel to choose between presenting evidence other than the defendant’s testimony and retaining the first and last closing argument. See Van Poyck v. State, 694 So.2d 686, 697 (Fla.1997); Diaz v. State, 747 So.2d 1021, 1026 (Fla. 3d DCA 1999); Cole v. State, 700 So.2d 33, 36 (Fla. 5th DCA 1997); Nicole Velasco, Taking the "Sandwich" Off the Menu: Should Florida Depart from Over ISO Years of Its Criminal Procedure and Let Prosecutors Have the Last Word?, 29 Nova L.Rev. 99, 116-18 (2004). One might argue that the elimination of the "sandwich” benefitted members of the criminal defense bar by relieving them of a tactical decision that was occasionally difficult to make.