Filed 12/11/20  P. v. Scott CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C081903 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF151241) |
| v. | |
| DUANE RAY SCOTT, | |
| Defendant and Appellant. | |

A jury convicted defendant Duane Ray Scott of one count of lewd and lascivious conduct with K.S., a child under the age of 14 by use of force or violence.  The victim, who was four years old at the time of the offense, did not report the incident for over 10 years.  Defendant was the live-in boyfriend of the victim's mother.

1

The victim was 16 years old at the time of trial. Defense counsel was able to highlight a number of inconsistencies in the victim's testimony to the jury, and defendant presented an expert witness, a clinical psychologist, who told the jury that many people have zero memories of events before they are six years old, and that a sexual assault victim might remember core details, but not the peripheral details of the assault. As a result, the jury was unable to reach a verdict on four of the five charges. Defendant argues the trial court erred in denying his motion for new trial and in allowing the testimony of Alicia O. under Evidence Code section 1108. Defendant was convicted of the forcible digital penetration of Alicia O. when she was 15 years old. The Alicia O. incident happened within months of defendant's sexual assault of K.S. We shall conclude the trial court did not abuse its discretion in denying the new trial motion or in admitting Alicia O.'s testimony.

We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

K.S. testified when she was 16 years old. When she was four years old, she lived in Davis with her mother Kimberly and brother. She usually slept with her mother or brother because she did not like the dark. Her mother had several boyfriends while they were living there, and she would have to sleep with her brother when the boyfriends spent the night.

*Facts Forming the Basis of Counts 1 & 2*

Defendant first began dating K.S.'s mother when K.S. was four. One night when defendant was there, K.S. woke up and tried to get in bed with her mother. Defendant yelled at her and told her, "Lay back down. Go to sleep." She went back to her brother's room, but could not sleep, so she went back and knocked on her mother's door again. Defendant came out of the bedroom and told her to go back to her room. This time, defendant went back to K.S.'s bedroom with her. She was whining because she wanted her mother. Defendant and K.S. both sat on her bed. He started touching her chest under

2

her shirt. He put his other hand inside her pants, on top of her underwear, and rubbed her vagina. He told her that if she was not quiet, she would not see her mother again. He put his hand over her mouth and told her again that if she told anyone, she would not see her mother again.

While defendant's hand was on her mouth, K.S. lay back on the bed. Defendant took off her shorts and underwear and got on top of her. He rubbed her vagina again and opened her legs. He pulled his pants and underwear down and tried to force his penis inside her. He tried more than once, but it would not go in.

She did not tell her mother what had happened and told her father only that defendant had yelled at her.

*Facts Forming the Basis of Counts 3 & 4*

K.S. testified that after this incident, defendant came into her bedroom in the middle of the night. She said he put his hand inside her gown and touched her chest. He took off her underwear, got into bed on top of her, and tried again to force his penis inside her. She did not tell anyone what he had done. On cross-examination, K.S. testified that this incident occurred after she turned five, in the summer of 2005. When asked how it could have happened then, since defendant moved out of her mother's apartment in February 2004, K.S. could only assume she had her dates wrong.

*K.S.'s Disclosure of the Events*

K.S. first told someone about the incidents approximately 10 years after they happened. One day, her boyfriend, Andre, asked her what was wrong with her, and she broke down crying. She told Andre her mother had a boyfriend when she was young, and that he had touched her. Shortly thereafter she told her mother what had happened.

K.S. testified that when she was in the eighth grade a rumor had gone around that she had sex with someone who was 18. She testified she had dated an 18-year-old for less than two months when she was 13, and they had kissed, but they had not had sexual intercourse. The man's name was Marquis Ramot. The other person she had dated who

3

was older than she was Andre, who was two years older. On cross-examination, K.S. was asked about a conversation she had with the prosecutor and the prosecution's investigator. When asked if she told them that she did have a sexual relationship with an older guy, she said, "Which is An—I've never had sex with Marquis."

*Defendant's Subsequent Conviction of Another Sexual Molestation*

Defendant moved out of Kimberly's apartment in 2004. Alicia O., who was 15, was living in Berkeley with her mother in April 2004. Alicia met defendant when she was walking to work, and he stopped his car and offered her a ride. She took the ride and gave him her phone number. She told defendant how old she was, and he told her he was 25. He called her several times. He came to her school and took her to lunch. On April 13, 2004, defendant picked up Alicia and drove her up into the Oakland Hills after stopping at a liquor store to buy alcohol. She asked where they were going, and he told her not to worry about it. She was uncomfortable and scared, and looked for an opportunity to jump out of the car but did not find one. Defendant pulled over to the side of the road, and her passenger side door was very close to a cliff edge, which prevented her escape. He touched her under her bra and told her to get in the back seat. He performed oral sex on her and told her she took it like a pro. He lowered his pants and repeatedly penetrated her, either with his penis or fingers, while she tried to push him off. It was very painful. Alicia had never been sexually active before, and she suffered tears and cuts to her vagina. Afterward, defendant told her, "My dick won't go in you without some pain. You'll get used to it." He also told her he wanted to be like an uncle to her, but an uncle that was "fucking" her. He said he wanted to teach her how to work other men for money and gifts.

After she reported the incident, Alicia made a pretext call to defendant at the request of law enforcement. Alicia admitted she did not remember much about the telephone call, so the prosecutor showed her a summary of the call to refresh her recollection. The prosecutor said, "Instead of reading the whole two pages, I'll direct you

4

to this bottom portion." Then, the prosecutor asked what Alicia remembered defendant saying during the conversation. Alicia responded, "That I couldn't have caught anything from him because it never went that far." Defendant said that he had tried to put his penis in her vagina, but it would not go in. Defendant pleaded no contest to the attack on Alicia.

For the first incident against K.S., defendant was charged with committing a lewd and lascivious act through force or fear by touching K.S.'s vagina with his penis (count 1) and by touching her breasts and vagina with his hand (count 2). (Pen. Code, § 288, subd. (b)(1).)[1] For the second incident, defendant was charged with committing a lewd and lascivious act through force or fear by touching K.S.'s vagina with his penis (count 3) and by touching her vagina and breasts with his hands (count 4). (§ 288, subd. (b)(1).) Defendant was also charged with burglary for entering K.S.'s bedroom with the intent to commit a felony (count 5). (§ 459.)

The jury found defendant guilty only of count 2. The jury was unable to reach a verdict on the remaining counts, and the trial court declared a mistrial on those counts.

DISCUSSION

I

*New Trial Motion*

The jury rendered its verdict on October 19, 2015. On October 30, 2015, the prosecution informed the court it would not retry defendant on the counts for which the court had declared a mistrial, and sentencing was set for December 16, 2015. On that day, the trial court granted defendant's motion for a continuance to allow him to file a motion for new trial. The motion was finally heard on April 8, 2016, nearly six months after the verdicts were announced. The stated bases for the motion were prosecutorial

---

**1**    Undesignated statutory references are to the Penal Code.

5

misconduct, instructional error, newly discovered evidence, and cumulative error. We consider each of the grounds below.

" ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' [Citations.] ' "[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background." ' [Citation.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 328.) We shall conclude the trial court did not abuse its considerable discretion in denying the new trial motion.

A. *Prosecutorial Misconduct Claim*

"To constitute a violation under the federal Constitution, prosecutorial misconduct must 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.' [Citations.] 'But conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' [Citation.] To be cognizable on appeal, a defendant ' "must make a timely objection at trial and request an admonition; otherwise, the [claim of prosecutorial misconduct] is reviewable only if an admonition would not have cured the harm caused by the misconduct." ' [Citations.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 122.)

The claim of prosecutorial misconduct was based on two incidents. The first was the testimony of Alicia O. regarding evidence the trial court had ordered excluded. The second incident was the prosecutor's failure to disclose the fact that part of K.S.'s testimony was not truthful.

1. *Alicia O.'s Testimony*

The trial court granted defendant's motion in limine to exclude information from Alicia O. that defendant had given her a sexually transmitted disease (STD). When questioning Alicia O., the prosecutor asked her if defendant had ever apologized to her.

6

Alicia O. said she did not recall that. The prosecutor refreshed her recollection with a summary of a recorded pretext telephone call, and told her, "Instead of reading the whole two pages, I'll direct you to this bottom portion." Alicia O. reviewed the document, and the prosecutor asked, "What do you recall [defendant] telling you during that conversation?" Alicia O. answered, "That I couldn't have caught anything from him because it never went that far." The prosecutor asked, "Did he apologize during that conversation?" Alicia answered that he had, but he had retracted it "a little bit." After two more questions and answers regarding the telephone call, defense counsel requested a sidebar.

Defense counsel argued the prosecutor had deliberately violated the court's in limine ruling and moved for a mistrial. The prosecutor responded that she had not intended to direct the witness to the statement about Alicia O. having contracted an STD, but was trying to elicit that defendant had tried to put his penis in her, but that it would not go in.

The trial court found the question objectionable and said it would agree to strike the answer. Defense counsel stated it did not want to draw attention to the answer by striking it. The trial court responded that there were no grounds for a mistrial because it was a "small, small point," and the witness had never stated that she picked up an STD. After further argument, the trial court said: "It's nothing—it's just not that big of an issue. It should not be part of the record. It was a mistake. It's not . . . it's so small compared to the rest of her testimony and the serious issues that you're presenting in your defense. It's just not a big deal." The court also said that "when the testimony came in—and this is something that you can't get from the transcript—it came in as an offhand remark by the witness. I did catch it, but barely."

The People argue defendant has forfeited his claim of misconduct because he did not request an admonition. " 'In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would

not have cured the harm is the claim of misconduct preserved for review.' [Citation.]" (*People v. Friend* (2009) 47 Cal.4th 1, 29.) Defendant argues the matter was not forfeited because an admonition would not have cured the harm.

Whether or not the issue was forfeited because of the failure to request an admonition, we conclude the trial court properly denied the mistrial motion because there was no misconduct by the prosecutor. As indicated, a finding of prosecutorial misconduct requires an act that infects the trial with unfairness that results in a violation of due process, or the use of deceptive or reprehensible methods to persuade the jury. (*People v. Valdez, supra*, 32 Cal.4th at p. 122.) Neither of these situations was present here. As the trial court indicated, "[i]t's just not a big deal." It does not appear that the prosecutor intentionally tried to get the witness to testify to having an STD. Rather, in trying to limit the witness's review of the transcript of the telephone call, the prosecutor inadvertently directed the witness refer to a subject that the court had ordered excluded. The prosecutor told the trial court as much, and that she had admonished the witness not to mention the STD. The witness did not affirmatively assert that defendant had given her an STD. The statement was brief, and it was not more prejudicial than the witness's testimony that she thought he penetrated her with his fingers and his vagina. The prosecutor's questioning did not rise to the level of prosecutorial misconduct.

2. *Failure to Disclose Exculpatory Evidence*

When K.S. was being cross-examined, defense counsel asked her about an interview she had several months earlier at the multidisciplinary interview center (MDIC). Defense counsel asked K.S. if she had watched the video from the interview. She said that she had. She said that Silvia (Aceves) showed her the video. K.S. testified that Silvia is someone who helps victims. Defense counsel asked her if she needed help remembering what she said. K.S. responded: "They asked me before. They said, 'Do you know everything?' I said, 'Yes. I don't need to watch it.' " Defense counsel asked

8

her who told her she needed to watch the video, and she replied: "Silvia was the only one there at the time."

Aceves was later called as a witness by defendant. She testified she worked as a victim advocate for the Yolo County District Attorney. She testified she showed K.S. the video of the MDIC interview. She stated that K.S. never told her she did not need to see the video. She said she sat next to K.S. throughout her testimony in court. When there was a break in the proceedings after K.S. testified, she told Aceves she did not need to see the video, Aceves told the prosecutor that K.S. had never had such a conversation with her.

Defendant's motion for new trial argued it was misconduct for the prosecutor to fail to disclose to the defense that K.S. was not truthful when she claimed to have told Aceves she did not need to see the video of her MDIC interview. In denying the motion, the trial court stated: "The victim testified that she had told Silvia, 'I don't need to watch that,' and Silvia Aceves, who works for the District Attorney's Office, said, 'No, she never told me that.' That statement apparently was not properly disclosed to the defense. It did come out in trial. And the defense in this case had the opportunity, they had the knowledge, they had the opportunity to cross-examine Silvia Aceves on the statement and the opportunity to cross-examine the victim about her statements to Silvia Aceves. We were still in the evidentiary phase and the witnesses could have been put on the stand and questioned about that, so I think that the defendant was not denied a fair trial. In the sense of a *Brady*[2] violation, it would not be material. It would not change the outcome if that had been disclosed at an earlier time, so that's not grounds for a mistrial, and any motion for a mistrial on that ground alone would be denied." Defense counsel argued that even though K.S. was subject to recall, Aceves did not testify until the last day of

---

**2**     *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] (*Brady*).

trial, and he would have had to ask for a continuance to bring K.S. back for cross-examination. The trial court stated that defense counsel still could have made the request, and the trial court could have granted the continuance for that reason.

*Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady*, *supra*, 373 U.S. at p. 87.) There was no due process violation here under *Brady* because the evidence was actually presented at trial. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 467.)

Also, because the evidence was presented at trial, it is unlikely under any standard that defendant suffered prejudice. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1349.) K.S.'s veracity was obviously a problem for the jury, which did not convict defendant on four of the five charges. Because defendant did not ask to recall K.S. to testify about watching the MDIC video, defense counsel was able to further tarnish K.S.'s veracity with the following argument: "Remember the stipulation about her acknowledging having sex with an older guy? Who was the older guy? Marquis Ramot. So she felt comfortable lying, knowing what she just told the prosecutor two weeks earlier. And that statement with Ms. Aceves where she threw Ms. Aceves under the bus. 'I didn't want to watch it. She made me.' Ms. Aceves was sitting there right next to her. She knew [K.S.] was lying in that moment. And [K.S.] didn't have any concern. She just assumed people would cover for her because after all, that was her victim advocate. . . . [¶] This is a young woman who likes to lie."

Since the prosecution's failure to notify defense counsel that K.S. had not told the truth did not violate defendant's due process and was harmless by any standard, the trial court did not abuse its considerable discretion when it denied defendant's new trial motion on this ground.

10

B. *The Trial Court's Decision to Strike Part of Defendant's Closing Argument*

As another ground for defendant's new trial motion, he argued the trial court was wrong to strike portions of defense counsel's closing argument asserting that the prosecution was hiding evidence from the jury, specifically, evidence that K.S. was untruthful about not wanting to watch her MDIC interview and evidence that defendant did not incriminate himself in his police interview.

In his closing argument, defense counsel made the following argument about K.S.'s MDIC interview: "And you heard [K.S.] testify that she told Ms. Aceves that she didn't need to watch it, but Ms. Aceves made her watch it anyway. [¶] The prosecutor said, 'That wasn't a lie. That was her just trying to explain herself.' If that was the case, why didn't the prosecutor follow up on that question and ask her to explain it? Because Ms. Aceves testified, she got off the stand, told [the prosecutor] and [K.S.] was on for another day. Why didn't [the prosecutor]—who now knew that she lied—ask her, '[K.S.], you said something about Ms. Aceves. Are you sure that happened?' They knew she lied. And not only did they not ask her about it, they kept it from you. And if I hadn't have called Ms. Aceves as a witness, we would have never known about it. So if they really believed she was just trying to explain, why not give her the opportunity to explain that to you *instead of hiding it from you*." (Italics added.)

Regarding defendant's police interview, Detective Ron Trn testified that he arrested defendant and interviewed him. The interview lasted approximately 19 minutes and was recorded. In closing, defense counsel argued as follows: "He [defendant] is now presumed innocent, and the burden is on the prosecution to prove guilt beyond a reasonable doubt. He doesn't have to say a thing. [¶] But what you can consider is the fact that when he was arrested, the police did talk to him. They read him his Miranda rights and he agreed to talk to them. He did so for over 18 minutes in a recorded conversation. And the Rules of Evidence allow them to play that for you. I can't. So they want you to believe [K.S.] beyond a reasonable doubt, and they're not even going to

11

show you the statement of the only other person who was possibly there.  That's their choice, but it's also their burden.  And don't you think if [defendant] said anything other than 'I did not touch that girl.  I never did anything,' you would have heard and seen that video  But you didn't."

After the next break, the prosecutor addressed two issues she claimed were improper in defendant's closing argument:  "The first issue is that he has said to the jury that I am hiding evidence from the jurors.  And this is in relation to [K.S.]'s statement to Silvia Aceves.  And that's improper and that's an implied allegation of prosecutorial misconduct that I think the Court needs to hear and make a finding on.  And he also made an improper argument when he argued that the People are hiding the defendant's statement from the jurors."  The prosecution asked the court to make a finding that there was no intentional deception, to strike those comments from the record, and instruct the jury not to regard the arguments.

The trial court stated that it was "provocative and troubling" that defense counsel had argued the prosecutor was hiding evidence, also it would have been permissible to point out that the prosecutor had not clarified K.S.'s testimony.  After some discussion, the court decided to strike from the record the sentence that the prosecution was hiding evidence and instruct the jury not to give it any weight.  After further research, the trial court decided not to allow the prosecutor to comment on defendant's silence at trial to counteract the defense argument that the video of his interview with Detective Trn would have been shown to the jury if it were incriminating.

Thereafter, the court gave the following instruction:  "Defense counsel suggested during closing argument that the prosecution had hidden evidence from the jury.  The Court at this time is striking the Defense reference to 'hiding evidence.'  The jury is to disregard that argument and not discuss it at all.  You should rely on the admitted evidence.  [¶]  I will note, the parties do have a fair right to comment on the failure to produce a witness and failure to ask a question except that the defendant has an absolute

12

right not to testify at this trial, and you should not give that any consideration. At this time just stay focused on the evidence and the law as I read it to you. And so I just want to clarify that to you."

In the new trial motion, defendant argued it was proper for him to argue the prosecutor was hiding evidence, and that the jury likely understood the court's instruction to mean they could not consider any of defendant's arguments about K.S.'s false testimony and the prosecution's failure to introduce defendant's interview video.

In denying the motion, the trial court stated: "Instructional error regarding the defense claim that the Court admonished the defense counsel in closing argument not to use the word 'hiding,' referring to the prosecution's hiding evidence or hiding discovery and the instruction I gave to the jury to disregard that word and to strike it, that was not instructional error and it would not have had any impact whatsoever on the jury. It involved a discovery issue. They used the word 'hiding' suggesting intentional misconduct by the attorney. That cannot be argued in closing argument, but the Court had made some sort of ruling that that was the case, and in the end it is this Trial Court's belief that the jury was just not interested in discovery and the timing of discovery and the conduct between the lawyers, so I think that ruling was proper in full review of the case at this time, and even if it wasn't proper, it would not have prejudiced the defendant and led to a different result in this case."

Defendant now argues he was deprived of proper arguments because the jury was told to disregard them. He argues the trial court not only told the jury to strike the word "hiding," but also it told the jury "to disregard that argument and not discuss it at all." He argues that as a result, he was denied the opportunity to have his counsel's argument considered by the jury.

It is well settled that personal attacks on opposing counsel are irrelevant and improper. (*People v. Sandoval* (1992) 4 Cal.4th 155, 184.) Nevertheless, counsel may attack the credibility of opposing witnesses and the validity of the opposition's case.

13

(*People v. Seumanu, supra*, 61 Cal.4th at p. 1337; *People v. Parson* (2008) 44 Cal.4th 332, 360.) The trial court's instruction to the jury was not error. The trial court properly struck the word "hiding" from defendant's argument and any implication that the prosecutor was hiding evidence. Any such implication constituted a personal attack on the prosecutor. The court further informed the jury that it should stay focused on the evidence, but that it could properly consider the failure to produce evidence or a witness, except that defendant had the absolute right not to testify. There was nothing improper in the instruction, and it did not deprive defendant of his argument that K.S. was untruthful, or that defendant had not incriminated himself in his police interview.

C. *Court Properly Declined to Give CALCRIM No. 306*

CALCRIM No. 306 informs the jury that both parties must disclose their evidence to the other side before trial within legal time limits, and that the failure of either side to make timely disclosures can deny the other side the chance to produce all relevant evidence, counter opposing evidence, or receive a fair trial. It further informs the jury that one side failed to disclose certain evidence within the time required, and that it is for the jury to determine the significance of the late disclosure.

Defendant asked the court to give CALCRIM No. 306 because of Aceves's testimony, which we have outlined above, and because of the following incident that occurred before opening statements. One day before opening statements were scheduled to begin, the prosecutor informed the court that when she spoke with her investigator that morning, she realized one of K.S.'s statements had not been disclosed to the defense. The prosecutor said she had intended that the interview be recorded and immediately discovered, but that she realized the night before she did not have a recording of the interview. The prosecutor said she would get the recording and the investigator's notes to the defense as soon as possible.

Defense counsel stated he did not dispute that the omission was unintentional but asked for a continuance of the trial so he could review the statement. Defendant

14

requested, and the court granted a one-day continuance. A few hours later the prosecutor provided defense counsel the investigator's notes, together with a summary of K.S.'s interview. The summary stated in part: "[K.S.] acknowledged that she was sexually active and that she did have a sexual relationship with an older guy. She owns her decisions and does not blame her promiscuity all on being molested."

When defense counsel cross-examined K.S., he questioned her about her relationship with Ramot, then asked if she remembered her interview with the prosecutor and investigator. He asked, "Do you remember them asking if you did have sex with that older man." When she said no, defense counsel asked, "Did you tell [the prosecutor] that you did have a sexual relationship with an older guy?" K.S. responded: "Which is An— I've never had sex with Marquis."

Outside the presence of the jury, defense counsel informed the court it wanted a stipulation from the prosecution that K.S. had told the prosecutor and investigator in the interview that she had a sexual relationship with an older guy. The prosecutor objected and said that K.S.'s in-court testimony was consistent with her prior statement, because she had not previously said that the older guy was Marquis. The court agreed that defendant should be able to ask the questions, and told the prosecutor she must either stipulate, or make the investigator available to testify. The prosecutor eventually entered into the following stipulation: " 'On September 17th, 2015 [the prosecutor] and [investigator] spoke with [K.S.] During the conversation, [K.S.] acknowledged that she did have a sexual relationship with an older guy.' "

When the trial court refused to give CALCRIM No. 306 based on these two incidents, it stated that it had granted a continuance, and that it would have granted any reasonable short continuance. It said: "The defendant had an opportunity to cross-examine all the—at least Ms. Aceves on the second point and to the first point, the parties reached a reasonable stipulation. [¶] And so I think that there's been no prejudice. I think there are other remedies that the Defense can pursue. This is highly inflammatory

15

to the jury to interject underlying discovery disputes.  I want this jury to stay focused on the important question as to whether the People proved the case beyond a reasonable doubt, and that involves [K.S.] and the testimony surrounding her and the alleged conduct against the defendant."

Months after the jury rendered its verdict, and the day before the hearing on the new trial motion, April 7, 2016, defendant filed the declaration of Steve Gill, the investigator for the Yolo County District Attorney's office.  In the declaration, Gill stated:  "When [K.S.] spoke to me about the 'older guy' identified in my report, she was not referring to her ex-boyfriend, Andre.  She was referring to a different male adult, whom she had a relationship with when she was 13 years old.  She did not identify this older guy by name.  [¶]  [K.S.] made the above statement during a discussion about her sexual relationships, and I understood her statement to mean she had a sexual relationship with the older guy.  However, I cannot recall, one way or another, whether [K.S.] explicitly specified that she had 'sexual intercourse' with the older guy.  I did not ask clarifying questions on this specific issue."  The declaration also stated that Gill had been in Las Vegas during most of the trial, but returned on October 15, 2015, four days before the jury rendered its verdict.

In addressing the issue in response to defendant's new trial motion, the court reasoned:  "It's dealing with discovery matters and conduct between the lawyers, and it would not have changed the outcome whether that instruction would have been given or not.  The defendant, importantly here, was given an opportunity to cross-examine the victim on all these issues and then argue that the defendant had proven properly impeached, so while discovery sanctions could have issued, the sanction of reading CALCRIM 306 was not mandated by the fact, and therefore a motion for new trial is denied on that ground . . . ."

Defendant now argues the trial court should have granted his new trial motion because it refused to instruct the jury with CALCRIM No. 306. We conclude the trial court did not abuse its discretion.

Discovery in criminal cases is governed by sections 1054 through 1054.10. Section 1054.5 provides that if a party fails to comply with the requirements of these sections "a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).) Pursuant to this statute, the trial court has a range of tools at its disposal to remedy a discovery violation. The determination of the appropriate sanction is within the trial court's broad discretion, and we review the trial court's action under an abuse of discretion standard. (*People v. Jenkins* (2000) 22 Cal.4th 900, 951; *People v. Lamb* (2006) 136 Cal.App.4th 575, 581.)

In this case, the trial court gave the requested continuance when the prosecutor disclosed she had failed to discover K.S.'s interview to the defense. The court further agreed that defendant should be able to question K.S. about the identity of the "older man" and told the prosecution it either had to enter into a stipulation or produce Gill for questioning. Defendant was able to question Aceves on the stand about what K.S. had said to her. The trial court indicated it would have allowed the defense to bring K.S. back for cross-examination, but defendant never asked to bring her back. These actions by the trial court were reasonable responses to the discovery failures. The trial court acted well within its discretion when it refused to give an instruction it saw as inflammatory and irrelevant to the issues. As the trial court did not err in refusing to give the instruction, it did not abuse its discretion in denying the motion for new trial on this ground.

17

D. *Newly Discovered Evidence Did Not Warrant A New Trial*

The newly discovered evidence on which defendant predicated the motion for a new trial was the declaration of the prosecutor's investigator, Gill. As indicated, K.S. testified she never had sex with Marquis Ramot, and the parties stipulated that K.S. told Gill and the prosecutor she had "a sexual relationship with an older guy." In closing, defense counsel argued that K.S. liked to lie and that she was brazen about it. He said: "Remember the stipulation about her acknowledging having sex with an older guy? Who was the older guy? Marquis Ramot."

During deliberation, the jury sent a note to the trial court that stated: "During closing statement, Defense counsel identified the older guy in the stipulation as being Marquis. Are we to take this as a fact?" The trial court answered: "Please consider CALCRIM 200, second paragraph,[3] and CALCRIM 222.[4] The jury shall decide the facts based on the admitted evidence."

In denying defendant's new trial motion on the basis of newly discovered evidence, the trial court recognized that the defense case would have been stronger had Gill testified and explained that he thought the older guy K.S. was talking about was not Andre. Then the court stated: "The victim was on the witness stand. The defense had an

---

[3]    "You must decide what the facts are. It is up to all of you, and you alone to decide what happened, based only on the evidence that has been presented to you in this trial."

[4]    " 'Evidence' is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence. [¶] Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' questions are significant only if they helped you to understand the witnesses' answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true. [¶] . . . [¶] [During the trial, you were told that the People and the defense agreed, or stipulated, to certain facts. This means that they both accept those facts as true. Because there is no dispute about those facts you must also accept them as true.]"

18

opportunity to cross-examine her. She denied that she had sex with Marquis, and she could have been examined regarding what she told Investigator Gill, and she could have been impeached on both her denial and her statement to the investigator, and in fact the defense gave a very compelling closing argument on this point, that Marquis was the older guy and that that was part of her motive to lie and make up a story regarding [defendant], and so the defense was afforded an opportunity to cross-examine the victim, to impeach the victim, and to argue persuasively on this point. [¶] . . . Even based on if Mr. Gill's testimony had been offered, the prosecutor still could have said that the victim was confused in the interview, that she flatly denied having sex with Marquis, or that she in fact misled Mr. Gill and she's standing to her testimony. [¶] But even more to the point, . . . in the end when you look at all the evidence in the totality of the case, it just isn't material. It isn't going to switch the outcome of the case if Mr. Gill were to come in and testify that he believed that [K.S.] was telling him that she had had sexual relations with a 20-year-old when she was 13 or whatever the exact dates turn out to be. In this Court's belief, it's not going to lead to a different result. It doesn't rise to that level of materiality even though the jury did ask about that, and the reason I make that conclusion is that the defense very effectively argued to the jury that you cannot believe this victim and listed numerous parts of her testimony that were either misrepresentations, lies or evasions and so forth, and he argued quite effectively that she should not be believed, . . . but the victim's demeanor on the witness stand gave the appearance of being credible, and the jury could believe that she was credible as to a part of the story and that she didn't have a motive to lie, and this story as to whether she had sex with Marquis or not is an interesting story, but it just doesn't amount to enough weight, if you will, to change what the jury concluded. . . . So for those reasons, even if I take into consideration all the arguments that the defense has made, they don't rise to the level of reversible error under Penal Code section 1181 or were to meet any federal due process standards."

19

"In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: ' "1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." ' " (*People v. Delgado, supra*, 5 Cal.4th at p. 328.)

Importantly here, " ' "[a] new trial on the ground of newly discovered evidence is not granted where the only value of the newly discovered testimony is as impeaching evidence" or to contradict a witness of the opposing party.' " (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 423.) In this case, the only value of Gill's statement was to impeach K.S.'s credibility. For that reason alone, the trial court acted within its broad discretion when it denied the new trial motion.

Additionally, the impeachment evidence was cumulative. There were other discrepancies in K.S.'s testimony, K.S.'s former best friend testified that K.S. was not truthful, defendant's expert testified that people rarely recall events that occurred before they were six years old and it would be unusual for a four-year-old to remember details as K.S. did, and defense counsel argued vigorously from the evidence that K.S. was not credible. The trial court did not err in denying the new trial motion on the basis of newly discovered evidence.

E. *Cumulative Error*

Finally, defendant argues the trial court should have granted a new trial based on cumulative error. As we have found no individual error, there is no cumulative error. (*People v. McDermott* (2002) 28 Cal.4th 946, 1005.)

20

## II

### *Admission of Alicia O.'s Testimony*

The prosecution moved in limine to admit evidence of defendant's conviction for the forcible digital penetration of Alicia O. under Evidence Code section 1108. Conversely, defendant sought to exclude the evidence.

The trial court ruled that the evidence was admissible. The court noted that there were "compelling similarities" as well as differences. The trial court stated that what it found "particularly compelling" was "that this was not remote in time, that the incident alleged against the 15-year-old girl happened in the exact same time period as that alleged in this case . . . ." The court further indicated the issue would not require an excessive amount of time, since it involved only a single witness and there was a conviction date.

Defendant now argues the trial court abused its discretion in deciding to admit the evidence because the evidence was more prejudicial than probative, in violation of Evidence Code section 352. We conclude the trial court did not abuse its discretion.

In an action where the defendant is accused of a sexual offense, Evidence Code section 1108 allows the prosecution to present evidence of the defendant's commission of another sexual offense, "if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." Evidence Code section 352 gives the trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Defendant's argument is limited to undue prejudice. He does not argue the evidence was unduly time-consuming, confused the issues, or misled the jury.

"When asked to exclude evidence as more prejudicial than probative . . . the trial court has broad discretion. Its ruling will not be disturbed on appeal unless the prejudicial effect of evidence so admitted clearly outweighed its probative value."

21

(*People v. Anderson* (2001) 25 Cal.4th 543, 591.) " ' "[P]rejudice" ' for purposes of Evidence Code section 352 'does not mean damage to a party's case that flows from relevant, probative evidence.' [Citation.] 'Rather, it means the tendency of evidence to evoke an emotional bias against a party because of extraneous factors unrelated to the issues.' " (*People v. Young* (2019) 7 Cal.5th 905, 927.)

In analyzing whether Evidence Code section 352 makes admissible past sexual offenses pursuant to Evidence Code section 1108, the court considers the following factors: (1) "the ' "nature, relevance, and possible remoteness [of the evidence]," ' " (2) " ' "the degree of certainty of its commission[,]" ' " (3) " ' "the likelihood of confusing, misleading, or distracting the jurors from their main inquiry," ' " (4) " ' "its similarity to the charged offense," ' " (5) " ' "its likely prejudicial impact on the jurors," ' " (6) " ' "the burden on the defendant in defending against the uncharged offense," ' " and (7) " ' "the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses." ' " (*People v. Erskine* (2019) 7 Cal.5th 279, 296.)

In this case, the prior offense was highly relevant and not at all remote to the charged crime, since it occurred within two months of the charged crime. Defendant was convicted of the crime against Alicia O., thus there was no uncertainty that the crime had been committed. As the court noted, the evidence was presented by only one witness, making it unlikely the jury would be confused, distracted, or misled. The defense did not cross-examine Alicia O., and since defendant was convicted of the offense against her, there was no cause to offer a defense to the crime. Since only one other offense was admitted, there was no alternative of offering less than all prior offenses.

Defendant's argument is that the incidents were not sufficiently similar, and that the admission of the prior incident was prejudicial.

Defendant argues the differences between the two incidents are significant. They include the age differences between the victims (15 as opposed to four), the fact that

defendant "groomed" Alicia O. by befriending her and plying her with alcohol, and the fact that defendant performed oral sex on Alicia O. before digitally penetrating her, whereas K.S. said defendant touched her breasts and vagina and penetrated her with his penis. The People argue the crimes were similar in that both victims were underage, both molestations followed the same sequence, i.e., they began with defendant groping the victims' breasts and vagina and ignoring pleas to stop, with defendant placing himself on top of the victims, and ended with defendant placing his fingers and/or penis in their vaginas.

We conclude the incidents were sufficiently similar to support the trial court's exercise of its discretion. Both incidents involved the sexual molestation of a minor. Both victims were girls. Defendant tried to get both victims to keep the molestations a secret. Both victims testified defendant tried to insert his penis into their vaginas. While the incidents were not identical, the acts were similar enough to make the Alicia O. incident probative.

Defendant argues he was prejudiced by Alicia O.'s testimony because her credibility bolstered K.S.'s account. However, this is not the prejudice that Evidence Code section 352 is designed to avoid. As indicated the prejudice to be avoided is the tendency of the evidence to evoke an emotional bias. "The potential for such prejudice is 'decreased' when testimony describing the defendant's uncharged acts is 'no stronger and no more inflammatory than the testimony concerning the charged offenses.' [Citation.]" (*People v. Eubanks* (2011) 53 Cal.4th 110, 144.) Alicia O.'s sexual assault was no more inflammatory than the actions to which K.S. testified. If anything, the incidents with K.S. had the potential of being more inflammatory since K.S. was so much younger than Alicia O. when the incidents occurred.

23

We conclude the trial court did not abuse its considerable discretion when it allowed evidence of defendant's prior sexual offense.[5]

### III

### *Ex Post Facto*

Defendant was convicted of a single violation of section 288, subdivision (b)(1). At the time of the offense, which occurred no later than 2004, section 288, subdivision (b)(1) carried a punishment triad of three, six, or eight years.  (Stats. 1998, ch. 925, § 2, pp. 6175-6176.)  In 2010 the statute was amended to increase the sentencing triad to five, eight, or ten years.  (Stats. 2010, ch. 219, § 7.)  This was the version of the statute in effect when defendant was sentenced, and the trial court sentenced defendant to an upper term of 10 years.  Defendant argues the sentence violates the prohibitions against ex post facto laws, and requests we remand the case for resentencing.

The Department of Corrections and Rehabilitation has already brought this matter to the trial court's attention, and the trial court has amended defendant's sentence to eight years.  A new abstract of judgment has been prepared and filed that reflects the modification.

---

[5]     We reject defendant's claim of cumulative error because there are no multiple errors to cumulate.

24

DISPOSITION

The judgment is affirmed.

_____/s/_____

BLEASE, Acting P. J.

We concur:

_____/s/_____

MAURO, J.

_____/s/_____

MURRAY, J.